GEORGE KERN v. FREDERICK MYLL.

94 477
141 214

[See 80 Mich. 525.]

*Nuisance—Landlord and tenant—Evidence.*

Where, for 10 or 11 years after the filling up of an old well under a dwelling-house, the premises are continuously occupied, and no complaint is made to the landlord that, through the settling of the filling and the accumulation of water, the well has become a cesspool, or that disagreeable odors exist on the

premises, he is not chargeable with such negligent ignorance as is equivalent to actual knowledge of such facts.

Error to Wayne. (Reilly, J.) Argued January 5, 1893. Decided January 20, 1893.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*William Look* and *H. F. Chipman (Henry M. Duffield,* of counsel), for appellant.

*George X. M. Collier,* for plaintiff.

McGRATH, J. This is an appeal from a second trial. At the conclusion of the first trial the court took the case from the jury on the ground that the declaration did not set forth a cause of action. On appeal this Court held the declaration good; that it disclosed a cause of action in tort, resting upon the duty of defendant to disclose to the plaintiff defects in the premises, amounting to nuisances, known to defendant and concealed from plaintiff, which were calculated to impair, and which did impair, the health of the plaintiff. The case is reported in 80 Mich. 525, where the declaration is fully set forth. It will be observed that the declaration is not founded upon a breach of duty on the part of defendant to keep the premises in a condition fit for occupancy or in repair, nor upon his negligence in that regard, but solely upon the construction and maintenance by defendant of a nuisance, and the concealment of its existence from the plaintiff.

The premises are located on the corner of Croghan and Rivard streets, and consist of a grocery store, butcher shop, and saloon, with living apartments over the grocery and butcher shop. The following is a sketch of the ground floor:

Plaintiff rented the premises in May, 1885, and occupied the grocery, butcher shop, and saloon until June, 1888, at which time he moved his family into the dwelling apartments. An old abandoned well had existed upon the premises prior to 1873, at the point C. At the instance of a tenant, a shed or lean-to had, in 1873, been erected over this old well. In 1877, one Ludwig, a tenant under defendant, with the consent of defendant, and at defendant's expense, tore down this shed or lean-to, and built the present one-story addition, and used it as a kitchen. Ludwig testifies that at that time he filled up this old well, that the filling was pounded down, and that the spot was filled up even with the surface. Up to the time that plaintiff moved his family into the dwelling apartments, in June, 1888, there was no stairway leading to those apartments, except the stairway from Rivard street, at the point A; but plaintiff, of his own motion, connected the addition with the dwelling rooms by the stairway at the point B.

The premises were occupied continuously by tenants from 1873 until plaintiff took possession, and the upper rooms had been occupied as dwelling rooms up to the time that plaintiff's family moved in. Plaintiff used the addition as a dining-room.

Plaintiff testifies that in October, 1888, he had a portion of the floor taken up, and discovered the old well, in which there were stagnant water and dead animals; that before this time he had discovered bad odors in the house; that his "first experience upon waking up in the morning was a sort of moisture. A smell was the first thing that came to my nostrils, but I could not locate it. I made diligent search through the premises to locate it. My family had been there about two weeks before I was obliged to call a physician." That his help would not stay, because of the noxious odors in the dwelling rooms; that his own health was seriously affected by them. Plaintiff's wife testified to "terrible smells" in the house, and that the doctor ordered them to take up the floor to see if the origin of the foul odors could not be discovered. Upon the discovery of the condition of the old well, plaintiff notified defendant, who suggested that the hole be cleaned out and filled with cinders and ashes; and plaintiff did so, and continued to occupy the premises until June of the next year, when he was proceeded against for non-payment of rent, and ejected.

There is no testimony tending to show that any complaint was made to defendant from 1873 to 1885, by any tenant, of any disagreeable or noxious odors about the premises. Indeed, there is positive evidence given by tenants that none existed. Although plaintiff occupied the premises for three years before he moved his family into them, and for five months afterwards, and now testifies that noxious and disease-breeding odors existed, he admits that no complaint thereof was made to defendant by him, or by any one for him, notwithstanding the rent was pay-

able monthly, and defendant was engaged in business in the immediate vicinity.

The testimony relied upon by plaintiff is that of one Ginster and plaintiff's wife. Ginster says that in 1873 he built a summer kitchen over the well; that there was water in the well; that he "worked at the time for Mr. Helpman, and he was working for Mr. Myll." Mrs. Kern says that when they made the discovery, in October, 1888, defendant said he knew that there was a well there.

Defendant says that—

"In the fall of '88, in October, I came into Mr. Kern's saloon, and Mrs. Kern came from the store, and she said, 'Did you know there was a well under this house?' And it struck me all at once, and I said, 'There used to be, but it was filled up at the time the addition was built.' And she said, 'We have the floor open, and we find there is some water in it; come and see it.' I saw it, and I said to Mr. Kern: 'George, the best thing that you can do is to have it drained, and have the water pumped out, and filled up, and make a good job of it. I will pay for it. I can't attend to it myself, for I have got to go away to-night to be gone nine or ten days.' I went up there when I came back, and asked him how about the well, and he said: 'It is all right. I filled it up, and it is all nice and dry.'"

Ludwig's testimony was not disputed, and it appeared that defendant at that time suggested the filling up of the old well; and it was filled up by Ludwig, in the manner stated, to Ludwig's satisfaction, and with defendant's knowledge. Ludwig used and occupied the addition for two years afterwards. Other tenants succeeded, and used and occupied it for six years thereafter. Plaintiff had occupied the premises for three years before bringing his family to them, and it must be presumed that he regarded the premises as fit for habitation, or he would not have brought his family into them. The discovery of the condition of this well was made in October, 1888. Eleven

years had elapsed since the filling in by Ludwig, and no suggestion had come to defendant that, through the settling of the filling and the accumulation of water, the old well had become a cesspool, nor had it been intimated to him that disagreeable odors existed on the premises, so as to put him upon inquiry, or suggest to him their possible or probable origin.

In view of the fact that, in 1877, this well had been filled up, and that for 10 or 11 years these premises had been continuously occupied, and no complaint or suggestion of imperfect condition had come to the defendant, he is not chargeable with such negligent ignorance as is equivalent to actual knowledge. The proofs fail to show any such construction or continuance of a nuisance, or knowledge and concealment of a condition amounting to a nuisance, as is alleged in the declaration. It is therefore unnecessary to notice the other allegations of error.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.