DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 16508. *En Banc.* July 13, 1922.]

Dorris Shew, *by his Guardian ad Litem Carrie Shew, Respondent,* v. James J. Hartnett *et al., Appellants,* Thomson Estate, Incorporated, *Appellant.*[1]

Landlord and Tenant (78)—Defective Premises—Injury to Servant of Lessee. The landlord is not liable to an elevator boy, employed by the tenant, for injuries sustained through the breaking of the elevator cable, where there was no warranty or covenant on the part of the landlord to repair, and the elevator was under the complete control of the tenant, who agreed to keep the premises in good condition and repair, and the unsafe condition was, upon reasonable inspection, as apparent to the tenant as to the landlord.

Same (78; 83)—Nuisance (15)—Defective Premises—Injury to Servant of Tenant—Evidence—Sufficiency. An elevator in an apartment house is not shown to be a public nuisance, as between the landlord and the lessee's servants, by the fact that the cable broke, where the premises were under the complete control of the tenant and the defect was, upon reasonable inspection, as apparent to the tenant as to the landlord; and Rem. Comp. Stat., § 2500, defining public nuisances does not change this rule.

Appeal (142)—Preservation of Grounds—Exceptions to Instructions. Failure to except to instructions to the jury does not preclude the review of an order denying a challenge to the sufficiency of the evidence and for a directed verdict, made prior to the giving of the instructions.

Trial (134)—Verdict—General Verdict—Construction and Operation. In an action for personal injuries, a general verdict

Reported in 208 Pac. 60.

against one defendant and in favor of another cannot be converted into a special finding against the latter, on the theory that both must be liable if one is liable.

. SAME (63)—PROVINCE OF COURT AND JURY — JUDGMENT NON-OBSTANTE—POWER OF COURT. Where the evidence is insufficient to sustain a general verdict in favor of one defendant, the court cannot grant judgment notwithstanding the verdict, but the only remedy is to grant a new trial.

Appeals from a judgment of the superior court for King county, Frater, J., entered November 12, 1920, upon the verdict of a jury rendered in favor of the plaintiff as to one defendant, and notwithstanding the verdict in favor of the other defendant, in an action in tort. Reversed.

*Carver & Pixley,* for appellants Hartnett *et al.*

*Peters & Powell* (*J. Speed Smith,* of counsel), for appellant Thomson Estate, Incorporated.

*Rummens & Griffin* and *Stephen V. Carey,* for respondent.

MITCHELL, J.—This is a personal injury action on behalf of Dorris Shew, by his guardian *ad litem.* On January 21, 1918, he, seventeen years of age, and as an employee of James J. Hartnett and wife, was operating a passenger elevator in an apartment house known as Haddon Hall apartments, in Seattle, when the hoisting cables of the elevator broke, causing the elevator to drop a distance of about thirty feet to the basement, causing the injuries complained of. A suit was commenced against the Hartnetts, lessees of the property, the Thomson Estate, Incorporated, owners of the property, and the J. J. Montgomery Elevator Company. The latter company was dismissed from the action upon its demurrer to the complaint and did not appear thereafter. The case was tried before a jury, and at the conclusion of all the evidence, the Thomson Estate,

Incorporated, demanded a nonsuit, or in the alternative a directed verdict in its favor, because of the insufficiency of the evidence to sustain a verdict against it. The motions were denied, to which exceptions were taken. The jury returned a verdict for the plaintiff against the Thomson Estate, Incorporated, but not against the Hartnetts. The Thomson Estate, Incorporated, thereupon moved for a judgment in its favor against the plaintiff notwithstanding the verdict, and at the same time the plaintiff moved for a judgment against the Hartnetts notwithstanding the verdict, in the amount of the verdict, or in the alternative for a new trial. The motion of the Thomson Estate, Incorporated, was denied, while that of the plaintiff for a judgment against the Hartnetts was granted. Judgment was entered accordingly, from which the Thomson Estate, Incorporated, and the Hartnetts have separately appealed.

Speaking generally, it may be mentioned the apartment house was built and the elevator installed by a party other than the Thomson Estate, Incorporated, which thereafter became the owner and for several years conducted the house and used the elevator in the same condition it had been received, other than the usual repairs, including new cables from time to time, until about September 15, 1917, the premises were let to one who, on October 16, 1917, with the consent of the lessor, the Thomson Estate, Incorporated, assigned the lease to the Hartnetts, who thereafter controlled and conducted the apartment house. By the terms of the written lease, under which the Hartnetts took and held possession, it was agreed, "the lessee hereby accepts the premises as in good tenantable condition and agrees and binds himself to keep same in good condition and repair at his own expense during the whole

term of this lease, the lessor being bound only to execute such repairs as are necessary for the maintenance of the roof and outer walls of the building.''

In the complaint it was alleged, in substance, that the elevator was carelessly and negligently built and installed, and was in an unsafe and dangerous condition at all times from the date of its installation to the time of the accident. The defects of construction, as stated in the complaint, pertained to the method of installation and the manner in which the elevator was built with reference to the safety appliances. As to the first, it was averred, in effect, that the drum of the elevator, about which the cables wound, was placed on the wrong side of the elevator shaft, necessitating the running of the hoisting cables under an idler or sheave in such way as to place an unusual and dangerous strain upon the cables; that it was provided with only one counterweight, whereas, for safe and practical operation, there should have been two or more. Concerning the other (the safety appliance), the allegation was that it was necessary for the safe and practical operation of the elevator to have a safety appliance which would hold the elevator carriage in case of the breaking of the cables, but that the safety appliance built in this elevator was constructed in such manner that it would not catch or hold the carriage in the event the cables broke; and that all of the defendants knew of each and all of said defects in the construction and maintenance of the elevator. It was further alleged that, by reason of such condition of the elevator, there was imminent danger at all times that it would fall and injure any one riding therein, and that it constituted and was a nuisance.

Concerning the appeal of the Thomson Estate, Incorporated, we consider and adopt the evidence most strongly against it. It shows, in effect, that the in-

stallation of the elevator was improper; that it should have been provided with more than one counterweight; and that the location of the drum in its relation to the sheave caused an "S" bend in the cable in its course, and hence an unreasonable strain upon the cable. This latter, however, by the testimony of all the experts, would cause only the shortening of the life of the cable. The cable in use at the time of the accident was shown, and admitted by respondent's counsel, to be of the best, if not the best, kind manufactured. Without dispute, the cable had been in use only about five months at the time of the accident, while the one last used prior to this one (of the same make and used by the Thomson Estate, Incorporated) lasted for more than a year. Nor was the accident caused by overloading the elevator. The capacity of the cable was nine or ten tons, and at the time it broke it was supporting the carriage of one and one-half tons' weight, the respondent and two passengers. The elevator was of a kind in common use and admittedly of good material as manufactured, and the evidence of respondent's witnesses was that, to the extent it was improperly installed, the objections and defects were open, obvious and apparent to any reasonably skilled mechanic possessing technical knowledge of elevator construction.

As to the safety appliances, the testimony of respondent's experts shows they are built in the top of the elevator car and are forced out only when the cables drop down, and that it is impossible to test them. On the contrary, the inspector who looked after this elevator for four or five years down until the date of the accident, and who continued to do so thereafter, testified that he had tested the safety appliances about every three months and always found them all right.

The testimony further shows that, commencing with the ownership of the property by the Thomson Estate, Incorporated, down until three days before the accident here involved, the elevator was, at the expense and request of the respective managers of the apartment house, regularly inspected once a month or oftener by an elevator inspector of six years' experience in the installation, testing and inspection of elevators, having several hundred elevators under his inspection service.

A careful examination of the record in the case fails to disclose that the Thomson Estate, Incorporated, or its manager, or the Hartnetts either, had any knowledge whatever of any defective installation or construction of the elevator. On the contrary, it appears, both of them testifying, that they did not have such knowledge, either original, or constructively through the advice or suggestion of their inspector or any one else. There was no proof of willful wrong, or fraud, or palpable negligence on the part of either.

The nonliability of the lessor to the servant of the lessee under such facts as these seems to be settled by the decisions in this state and according to the general rule. The employee of the lessee is in a position similar to that of his employer as to the right of recovery against the lessor. In the case of *Baker v. Moeller*, 52 Wash. 605, 101 Pac. 231, an employee of the lessee of a sawmill and its machinery was denied recovery against the lessor for personal injuries, although he alleged that, in renting the premises, the lessor knew it would be used as a sawmill and that workmen would be employed therein, and that the building and machinery were unsafe for the purpose for which they were leased. The opinion quotes 24 Cyc. 1114, as follows:

"In the absence of covenant on the part of the land-lord to repair, no active duty is imposed on him to disclose apparent defects which are equally within the knowledge of the tenant, or which the latter might ascertain by due diligence, the rule of *caveat emptor* applying in such cases with full force; and in such cases the landlord is not liable for subsequent injuries resulting from such defects."

The case calls attention to the fact that the same text announces the further rule that, in the absence of an express contract to repair, a lessor who leases property with knowledge of latent defects which he conceals from the lessee is liable for injuries resulting to the lessee by reason of such defects. And thereafter the court in the opinion says:

"No contractual relation having existed between the appellant and the respondent, and appellant having entered upon the premises only as the servant of the lessee, his right to recover against the respondent is in no manner superior to that of his employer."

A number of authorities are cited in support of the conclusion, and in addition thereto the following are to the same effect: R. C. L. vol. 16, p. 1067, Landlord and Tenant, § 588; Tiffany, Landlord and Tenant, § 86, p. 556.

Discussing the same subject, this court in the case of *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N. S.) 578 (wherein the landlord, without any agreement to repair, was held liable as for a tort where the defendant tenant was injured by a defective electric light switch, actually known to the landlord and not disclosed or known to the tenant), called attention to the general rule, vol. 3, Shearman and Redfield, Negligence (6th ed.), § 709, as follows:

"On the owner's entire surrender of control over premises to a lessee, he is, in the absence of any war-

ranty of their condition or fraudulent concealment of known defects or agreement to repair, on his part, free from liability to the lessee and to those whom the latter invites upon the premises, for defects which could have been discovered by the lessee, on reasonable inspection, at the time of hiring. In other words, if the lessee has the same opportunities as the owner to discover a defect, at the time of leasing, the rule of *caveat emptor* applies, and he takes the premises as he finds them. There is, therefore, no implied warranty on the part of a lessor that the demised premises are safe or reasonably fit for occupation. Where, however, there is some latent defect, *e. g.*, an original structural weakness or decay, or the presence of an infectious disease, or other injurious thing rendering the occupation of the premises dangerous, which were known to the lessor, and were not known to the lessee, nor discoverable by him on a reasonable inspection, then it was the duty of the lessor to disclose the defect; and if an injury results therefrom, he is liable as for negligence.''

It is stated the rule imposes no active duty upon the landlord to discover and disclose obscure defects or dangers, but only such as are known to him at the time and not likely to be discovered by a reasonably careful inspection by the tenant. Many cases are cited in the opinion, and finally the pertinent conclusion reached that:

''A painstaking examination of the authorities cited and many more, induces the conviction that the exception to the rule of nonliability of the landlord for injuries arising from defects existing at the time the lease was made, in the absence of warranty or express agreement upon his part to repair, can soundly be extended only to injuries resulting from a failure of the landlord to disclose those obscure defects not known to the tenant and not discoverable by a reasonably careful examination on his part, *but actually known at the time to the landlord.''* (*Howard v. Washington Water Power Co., supra.* Italics ours.)

So that, under the rule applied to this case, in which there was no warranty nor covenant on the part of the landlord to uphold or repair the elevator that was delivered into the complete control of the tenant, and where the improper installation of the elevator, as testified to by respondent's witnesses, was as obvious and apparent to the tenant upon reasonable examination and inspection as it was to the lessor, and where there is no proof of actual knowledge, nor of constructive knowledge through the services of a qualified inspector, on the part of the lessor of latent or obscure defects in the safety appliance of the elevator, assuming such defects existed, it must be concluded there is no liability against the Thomson Estate, Incorporated, in favor of the respondent.

Respondent seeks, however, to avoid the force of the rule by two contentions: (1) That the defective condition of the elevator constituted a nuisance and that it was the duty of the landlord to abate it before putting it in the control of another to be used, in order to avoid liability; and (2) that certain instructions of the trial court to the jury, to which no exceptions were taken by appellant, became the law of the case, and that, under those instructions and the facts in the case most favorable to the respondent, the verdict was justified and the judgment thereon must be sustained.

The liability of a landlord for a nuisance upon premises he has let is found to be discussed usually in cases of injuries to third persons and not to the lessee, or a member of the family, employee, guest or customer of the lessee; as to which last mentioned the lessor is liable only in case he has created the nuisance. *Ward v. Hinkleman,* 37 Wash. 375, 79 Pac. 956, quoting 18 Am. & Eng. Ency. Law (2d ed.), p. 238.

But assuming, without deciding, that it is applicable in favor of the tenant himself or his employee, we are

of the opinion that it is not applicable under the facts in this case. In the case of *Whitmore v. Orono Pulp & Paper Co.*, 91 Me. 297, 39 Atl. 1032, 64 Am. St. 229, 40 L. R. A. 377, cited in *Baker v. Moeller, supra* it was held that the lessor of a pulp mill did not owe to the servant of the lessee the duty of making the requisite examination or of possessing the requisite technical learning and communicating the results as to the safe condition of a piece of machinery in the mill before turning the plant over to the lessee. In that case there was no question or proof of fraud or concealment on the part of the lessor as in this case there is no proof of either. In that case it was said:

"The plaintiff, however, advances another and distinct proposition,—that the weak digester was a nuisance, allowed to become and remain so by the owner prior to and at the time of the lease, and hence that the owner must answer as for a nuisance. This proposition cannot be assented to. Some things may be nuisances per se under all circumstances, and as to all persons;—other things are nuisances only under certain circumstances and as to certain persons. A slaughter-house may be a nuisance as to the owner's neighbors, but none at all as to his employees in the business. What may be a nuisance as to others may not be a nuisance as to one's lessee, and here we are dealing with lessee and lessor.

"To constitute any particular thing a legal nuisance per se (apart from statute nuisances) as between lessor and lessee and the servants of the lessee, the thing itself must work some unlawful peril to health or safety of person or property,—as defective cesspools, imperfect sewers and drains, walls and chimneys liable to fall, unguarded excavations, etc. A fixed inert mass of metal upon a solid foundation upon one's own land like this digester, was not in itself dangerous to anyone. The employees of the lessee could have worked around and near it without any danger from it, to person or health, so long as it was let alone. The danger

arose only when the lessee, the employer, began to make use of the digester without first ascertaining its tensile strength and gauging the applied force accordingly.''

The same idea or principle is expressed in Tiffany, Landlord and Tenant, Vol. 1, § 102, as follows:

''Furthermore in order that a nuisance may be created, there must be a more or less continuous interference with the enjoyment of a common right or of particular property, and the mere fact that, by reason of a condition existing in connection with one's property, some single isolated, and approximately instantaneous, event occurs, resulting in immediate injury to the person or property of another, does not, it is submitted, render such condition, or the property in connection with which it exists a nuisance.''

And in concluding the Maine case, that court said:

''In *Jaffe v. Harteau*, 56 N. Y. 398, a boiler defective in construction exploded. In *Edwards v. New York & H. R. R. Co.*, 98 N. Y. 249, a gallery defective in construction fell. In *Doyle v. Union Pacific Ry. Co.*, 147 U. S. 414, a house was too weak structurally to resist snow slides known to the lessor to be recurrent and dangerous. In *Tuttle v. Gilbert Mfg. Co.*, 145 Mass. 169, a floor defective in construction fell. In *Bowe v. Hunking*, 135 Mass. 380, a stair-tread had been sawed. The lessor knew of the sawing but supposed the tread sufficient. In *Kern v. Myll*, 94 Mich. 477, a well had been used as a cesspool and thus had become offensive. In *Burdick v. Cheadle*, 26 Ohio St. 393, (20 Am. Rep. 767), fixtures put up by the lessor were structurally defective and fell. In *Wilson v. Treadwell*, 81 Cal. 58, a stairway was defective. In *Texas & Pacific R. R. Co. v. Mangum*, 68 Texas 342, a defective platform fell. In *Fellows v. Gishubler*, 82 Wis. 639, an unsafe awning fell upon a guest. In *McConnell v. Lemley*, 94 La. Ann. (34 L. R. A. 609), a defective gallery fell upon a guest. In *Johnson v. Tacoma Cedar Lumber Co.*, 3 Wash. 722, defective machinery in a mill gave way. In all these cases, *it appearing that the lessor was un-*

*aware of the defects,* it was held that he was not liable to the lessee or his servants for the injury occasioned by them." (*Whitmore v. Orono Pulp & Paper Co.,* *supra.* Italics ours.)

These reasons and authorities we think sufficiently answer the claim of liability on account of nuisance, and it may be stated in this respect that the statute, § 2500, Rem. Comp. Stat., upon the subject of public nuisance, relied on by the respondent, in no way changes the rule, under the facts in this case.

Nor can we adopt respondent's view that the failure of appellant to except to the instructions of the trial court prevents us from reviewing the order denying appellant's challenge to the sufficiency of the evidence and motion for a directed verdict at the close of all the evidence. The motions were made prior to the giving of the instructions. If it was error in the trial court to deny the motions, as we have seen it was, it is immaterial how the jury was instructed afterwards. Appellant was entitled at that time to have its challenge to the sufficiency of the evidence sustained, and it is still entitled to it. *Bernhard v. Reeves,* 6 Wash. 424, 33 Pac. 873; *Larson v. American Bridge Co.,* 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904.

As to the appeal of the Hartnetts, it is the theory and argument of the respondent that "the verdict against the Thomson Estate, Incorporated, was tantamount to a special finding in the case to the effect that the elevator was a public nuisance and that it fixed the amount of respondent's damage. As such special finding it was binding upon all the defendants, including the Hartnetts." The verdict was as general as it could be. By the terms of § 362, Rem. Comp. Stat., the verdict pronounced generally upon all of the issues in favor of the respondent and against the Thomson Estate, Incorporated, only. It did not find

the facts only, such as would have been the case of a special verdict under the terms of the same section of the code, but it pronounced generally upon all the issues between the parties named in it, and cannot be fastened upon the Hartnetts by the process of converting that general verdict against the Thomson Estate, Incorporated, into a special one against the Hartnetts. They are entitled to a jury trial. The trial they had resulted in their favor. As appellants here, their contention is that, had the trial court been of the opinion the evidence was insufficient to justify the verdict, which in legal effect was in their favor, or that it was against the law, the only remedy was to grant a new trial. That contention we think is correct. The judgment notwithstanding the verdict against the Hartnetts, was erroneous.

Reversed as to both appellants, with directions to the trial court to enter judgment in favor of the Thomson Estate, Incorporated, and to pass upon the respondent's motion for a new trial against the Hartnetts.

PARKER, C. J., MAIN, HOVEY, FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.