[No. 35707.   Department Two.   November 22, 1961.]

ROBERT T. FLANNERY, *Respondent*, v. SIDNEY L. NELSON *et al.*, *Appellants.**

*Reported in 366 P. (2d) 329.

*Carl P. Zapp* and *Leo A. Anderson*, for appellants.

*Martin L. Wolf* and *Lycette, Diamond & Sylvester*, for respondent.

OTT, J.—Sidney L. Nelson and Jeanette Nelson, his wife, are the owners of a warehouse, consisting of two stories and a basement. The properties of the marital community are rented, as a partnership, under the firm name of Nelson Enterprises. (The community partnership will be referred to hereinafter as Nelson Enterprises.) From September 15, 1956, to July 1, 1959, the warehouse property was leased to Mallory Transfer & Storage Co. The lease provided that the lessee would keep the property in good repair.

July 1, 1959, the warehouse was leased to Chesley Trans-

fer Co., Inc. (hereinafter referred to as Chesley). The lease provided:

"Lessee shall be fully responsible for the maintenance and upkeep of the elevator and shall comply with all ordinances applicable to the operation of said elevator, as well as with all statutes of the State of Washington applicable to said elevator; . . . "

Upon execution of the lease, Chesley commenced moving its storage items into the warehouse and, by August 1st, had completed its moving activity. The warehouse building contained a freight elevator which served the basement, ground, and second floor levels. The entrance to the shaft of the elevator was closed at each floor level by a wooden gate. The elevator mechanism was equipped with an interlocking device to prevent raising the gate when the elevator was at another level. By disengaging the interlocking mechanism, the elevator could be raised to any desired level above the floor, as a convenience for the unloading of items from the bed of a truck onto the elevator.

August 4, 1959, while the interlocking mechanism was either in disrepair or disengaged so that the gate could be raised when the elevator was at another level, Robert T. Flannery, an employee of Chesley, raised the gate on the main floor and was injured when he fell down the elevator shaft.

Flannery commenced this action against Nelson Enterprises to recover damages. The cause was tried to a jury.

From a judgment entered upon the jury's verdict in favor of Flannery, Nelson Enterprises appeals.

Appellant's first assignment of error is that the court erred in denying its motion for nonsuit at the close of respondent's evidence and, subsequent thereto, in denying its motions for a directed verdict and for judgment notwithstanding the verdict.

When the sufficiency of the evidence to establish an essential element of a cause of action is the ground upon which judgment notwithstanding the verdict is requested, we are committed to the following rule: The moving party

admits the truth of the evidence of the party against whom the motion is made and all inferences that can reasonably be drawn therefrom. Such a motion requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Traverso v. Pupo*, 51 Wn. (2d) 149, 151, 316 P. (2d) 462 (1957), and case cited; *Thompson v. Seattle*, 42 Wn. (2d) 53, 58, 253 P. (2d) 625 (1953), and cases cited. In ruling upon such motions, no element of judicial discretion is involved. *Kirkpatrick v. Department of Labor & Industries*, 48 Wn. (2d) 51, 53, 290 P. (2d) 979 (1955).

■ To establish a landlord's liability to an employee of a tenant for an alleged defect, where the tenant is in complete possession of the property and has the duty to repair, two essential elements must be proved: (1) The landlord must have actual knowledge of the defect, and (2) he must have failed to communicate this knowledge to the tenant. *Taylor v. Stimson*, 52 Wn. (2d) 278, 324 P. (2d) 1070 (1958), and cases cited.

In *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927 (1913), this court stated that liability of a landlord results "from a failure of the landlord to disclose those obscure defects not known to the tenant and not discoverable by a reasonably careful examination on his part, but *actually known* at the time to the landlord." (Italics ours.) The court also stated [p. 261]:

". . . It [the rule] imposes no active diligence upon the landlord to discover and disclose obscure defects or dangers, but it does impose a duty to disclose such as are known to him at the time and not likely to be discovered by a reasonably careful inspection by the tenant. The rule and the exception so limited to actual knowledge, are sustained by the decided trend of the authorities. [Citing cases.]" (Italics ours.)

Accord, *Taylor v. Stimson, supra; Shew v. Hartnett*, 121 Wash. 1, 208 Pac. 60 (1922).

Respondent's evidence established that Chesley had used the elevator for a month and was aware of the manner in

which it functioned. There is no evidence that the landlord had actual knowledge of the alleged defect.

Sidney L. Nelson was called by respondent as an adverse witness and testified as follows:

"Q. Mr. Nelson, were you ever aware at any time prior to this accident that such mechanical interlocks as were upon the elevator were worn out and not in working condition? A. No, sir."

Respondent's witness Norman Hansen, an employee of Western Elevator Company, serviced the elevator for more than one year for Mallory Transfer & Storage Co. prior to Chesley's moving in, and four times during the tenancy of Chesley. He testified that the elevator was equipped with an interlocking device by which "you couldn't open the gate if the elevator was away from the floor," and that the device was out of repair for nearly a year. When asked if he had reported the condition of the elevator to anyone, he answered in the negative and stated that his reports pertained only to greasing and oiling.

Respondent's witness William Rutherford, manager of Mallory Transfer & Storage Co., testified that he had used the elevator, but did not notice that it was defective in any manner, and that the elevator had been regularly inspected and no defect or inadequacy was reported to him.

Olcott W. Dakin, Chesley's manager, testified as follows:

"Q. And did you have any discussion with Mr. Nelson as to the condition of the elevator, that is whether it was—well, good or bad? A. I don't remember having a discussion with Mr. Nelson. I did have a discussion with Mallory Transfer because they had been using the building and operating it. Q. And did Mallory Transfer talk to you as to whether the elevator was good or bad? A. Yes, they did. Q. Did you then talk to Mr. Nelson relative to the elevator before you signed the lease? A. Not in that respect. I knew that they had it under service and that it was operating. Q. Well, specifically were you aware of any defects in the elevator when you entered into lease with the Nelson Enterprises? A. No, sir. The elevator had been operating by Mallory right along and it was being serviced by an elevator service company. . . . Q. Did you make any investigation of the elevator before you entered into the

lease to see whether there were any changes necessary? A. Yes, sir. Q. And did you find any changes necessary? A. No, sir."

The record establishes that the storage companies, which had exclusive control of the elevator and the duty to keep it in repair, had caused the elevator to be inspected regularly, and that at all times it was reported to be operating satisfactorily. Considering this evidence in the aspect most favorable to respondent, it was not established that Nelson Enterprises had actual knowledge of the alleged defect.

Respondent contends that Nelson Enterprises was aware that the elevator did not meet the standards required by Seattle City Ordinance No. 84905, and that, therefore, it had knowledge that the elevator's interlocking device was inadequate.

The contention has no merit for two reasons:

(1) The respondent's allegation of negligence on the part of Nelson Enterprises was not predicated upon a violation of the city ordinance. The several written reports of the city elevator inspectors, establishing that the elevator had been regularly inspected and concluding that "This elevator is in a safe operating condition," were offered in evidence and rejected. The permit issued by the city of Seattle approving the elevator installation, and a copy of the city ordinance which established inspection standards, were offered and rejected as exhibits. Nelson Enterprises' alleged negligence because the elevator did not meet the standards of the city ordinance was not put in issue by the pleadings, or considered by the trial court.

(2) Respondent relies upon the testimony of Charles W. Gibbs, a salesman for Western Elevator Company, to establish appellant's knowledge of the alleged defect. Mr. Gibbs attempted to sell Nelson Enterprises equipment which he contended would meet the standards of the ordinance. A thorough examination of Mr. Gibbs' testimony fails to establish that he informed Nelson Enterprises that the elevator in the warehouse was either defective or that it did not meet the ordinance standards. This evidence,

considered in its most favorable aspect to respondent, does not establish that Nelson Enterprises had knowledge of the elevator's alleged defect.

■ From our examination of the entire record, we conclude that respondent's evidence failed to establish that Nelson Enterprises had actual knowledge of the alleged defect, or that there was evidence from which such knowledge could be inferred.

For the reasons stated, we do not reach appellant's remaining assignments of error.

The judgment is reversed, and the cause remanded with instructions to enter judgment of dismissal.

FINLEY, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

March 8, 1962. Petition for rehearing denied.

