[No. 26494-0-I.   Division One.   September 16, 1991.]

DANA ASPON, *Appellant*, v. EDWARD LOOMIS, ET AL, *Respondents*.

*Eileen C. Sussex,* for appellant.

*William W. Spencer* and *Murray, Dunham & Murray,* for respondents.

WEBSTER, A.C.J. — Dana Aspon appeals the jury verdict returned in favor of the respondents, Edward and Pat Loomis, and the trial court's order denying her motion for a new trial. She asserts that the court erred in: (1) not instructing on her claim that the Loomises negligently failed to make a defective condition safe, (2) refusing to give Aspon's proposed instruction that a landlord has a duty to use ordinary care to keep the premises fit for human habitation at all times during a tenancy, and (3) admitting photographs of Aspon's breasts when the only

permanent damage she claimed was a scar to her left breast. We affirm.

## FACTS

In early 1985, the Loomises rented a house to Aspon's boyfriend, Kevin Howard. The Loomises purchased the house in 1972 as an investment for rental purposes and never lived in the house themselves. In late 1986, Aspon moved in with Howard.

On November 24, 1987, Aspon was getting ready for work. She had just finished taking a shower and had entered the utility room across the hall to get some clothes out of the dryer. The utility room was not shared with other tenants. In order to leave the utility room, it was necessary to pass in front of an oil furnace located near the doorway. A venting pipe protruded from the front of the furnace. The venting pipe was uninsulated and its surface temperature was searing hot. An oil burner box was attached to the base of the furnace.

With an armload of clothes, Aspon attempted to exit the utility room. She was looking at the light switch rather than where she was walking. As she passed in front of the furnace, she stubbed her toe on the oil burner box, lost her balance, and landed against the furnace pipe. As a result, she suffered serious burns to her left arm and breast with permanent scarring. The burner box was clearly visible at the time of the accident, and Aspon had tripped over the burner box several times previously. However, neither Aspon nor Howard was aware that the pipe presented any danger.

No one had ever informed the Loomises of any problem with the furnace venting pipe. Pat Loomis did not know that the venting pipe got hot or created any danger. Edward Loomis also testified that he did not know that the venting pipe got hot or created any danger; however, his son had told him that the pipe got "warm". Edward Loomis testified that if he had known that the pipe was dangerous, he would have repaired it.

As an electrician, Edward Loomis had worked on over 100 residential and commercial furnaces, and was familiar with the general operation of furnaces. In the course of his 35 years of employment on construction sites, he observed crews install heating systems and he read instruction manuals on the repair of furnaces. Although Loomis wired furnaces, he never hooked up vent pipes. Prior to the incident, he had done remodeling work in the utility room, changed the location of the washer and dryer, and changed the oil filter on the furnace. He knew that the pipe in question was a venting duct and that the occupants of the premises would have to pass near the furnace in order to use the laundry facilities. He was also aware that asbestos board was mounted on the wall nearest the pipe as a fire retardant and that there were remnants of asbestos wrapping attached to the venting pipe, indicating that it had been previously wrapped.

Aspon brought a negligence action against the Loomises, seeking damages for medical expenses, wage loss, residual scarring, and pain and suffering. She proposed a jury instruction based on WPI 130.06, which stated that "[a] landlord has a duty to use ordinary care to keep the premises fit for human habitation at all times during a tenancy." The trial court rejected the proposed instruction on the basis that the landlord-tenant act imposed a duty to repair only with respect to conditions specifically enumerated in the statute. In place of Aspon's proposed instruction, the court gave the following instruction as to a landlord's duty:

> A landlord has a duty to warn a tenant of any condition which involves an unreasonable risk of physical harm if:
> 1. The tenant does not know or have reason to know of the condition or the risk involved, and
> 2. The landlord knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk.

Instruction 12.

Aspon also proposed the following jury instruction:

The plaintiff claims that the defendant was negligent in one or more of the following respects:

That although defendant had superior knowledge of the dangerous condition then existing with respect to the venting pipe, he *failed to give his tenants warning* of the danger presented by the pipe.

That although defendant was familiar with the operation and maintenance of furnaces, knew or should have known the pipe was previously wrapped with protective insulation material, and knew or should have known protective wrapping materials were readily available on the market, he *failed to protectively wrap the pipe.*

Plaintiff claims that one or more of the acts of defendant's conduct was a proximate cause of injuries and damage to plaintiff. The defendant denies these claims.

(Italics ours.) Plaintiff's proposed instruction 2.

The trial court refused to give the proposed instruction and gave the following instruction instead:

The plaintiff claims that the defendant was negligent in:

That the defendant knew or should have known the venting pipe was hot and could cause injury and he *failed to give warning* of the condition.

The plaintiff claims that this was a proximate cause of injuries and damage to plaintiff. The defendant denies this claim.

The defendant claims that the plaintiff was negligent for causing her own injuries by tripping over an object which was open and obvious. The plaintiff denies this claim.

(Italics ours.) Instruction 4. Aspon's counsel proposed that this instruction be changed to indicate that the landlord had a duty not only to warn of the condition of the pipe, but also to make it safe, once he had notice and an opportunity to repair it. The court refused to include the proposed changes.

At trial, both parties introduced photographs showing Aspon's burns. Aspon's attorney objected to photographs offered by the Loomises[1] showing both of Aspon's breasts on the basis that the photographs lacked probative value and were needlessly embarrassing. The trial court admitted the photographs into evidence, reasoning that

---

[1] Defendant's exhibits 11 and 12.

the jury should have an opportunity to view the injury in context and that the photographs themselves were not prejudicial.

The jury returned a verdict in favor of the Loomises.

## DISCUSSION

We first address Aspon's claim that the trial court erred in refusing to instruct that "[a] landlord has a duty to use ordinary care to keep the premises fit for human habitation at all times during a tenancy." WPI 130.06. The Residential Landlord-Tenant Act of 1973 (RCW 59.18.060) provides:

> *The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:*
>
> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition substantially endangers or impairs the health or safety of the tenant;
>
> (2) Maintain the roofs, floors, walls, chimneys, fireplaces, foundations, and all other structural components in reasonably good repair so as to be usable and capable of resisting any and all normal forces and loads to which they may be subjected;
>
> (3) Keep any shared or common areas reasonably clean, sanitary, and safe from defects increasing the hazards of fire or accident;
>
> (4) Provide a reasonable program for the control of infestation by insects, rodents, and other pests at the initiation of the tenancy and, except in the case of a single family residence, control infestation during tenancy except where such infestation is caused by the tenant;
>
> (5) Except where the condition is attributable to normal wear and tear, make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy;
>
> (6) Provide reasonably adequate locks and furnish keys to the tenant;
>
> (7) Maintain all electrical, plumbing, heating, and other facilities and appliances supplied by him in reasonably good working order;
>
> (8) Maintain the dwelling unit in reasonably weathertight condition;

(9) Except in the case of a single family residence, provide and maintain appropriate receptacles in common areas for the removal of ashes, rubbish, and garbage, incidental to the occupancy and arrange for the reasonable and regular removal of such waste;

(10) Except where the building is not equipped for the purpose, provide facilities adequate to supply heat and water and hot water as reasonably required by the tenant;

(11) Designate to the tenant the name and address of the person who is the landlord by a statement on the rental agreement or by a notice conspicuously posted on the premises. The tenant shall be notified immediately of any changes by certified mail or by an updated posting. If the person designated in this section does not reside in the state where the premises are located, there shall also be designated a person who resides in the county who is authorized to act as an agent for the purposes of service of notices and process, and if no designation is made of a person to act as agent, then the person to whom rental payments are to be made shall be considered such agent.

No duty shall devolve upon the landlord to repair a defective condition under this section, nor shall any defense or remedy be available to the tenant under this chapter, where the defective condition complained of was caused by the conduct of such tenant, his family, invitee, or other person acting under his control, or where a tenant unreasonably fails to allow the landlord access to the property for purposes of repair. When the duty imposed by subsection (1) of this section is incompatible with and greater than the duty imposed by any other provisions of this section, the landlord's duty shall be determined pursuant to subsection (1) of this section.

(Italics ours.) Aspon contends that the italicized language imposes upon landlords a general duty to "keep the premises fit for human habitation", which extends beyond the specific duties enumerated in subsections (1) through (11) of RCW 59.18.060.[2] The Loomises contend that a landlord's duty to a tenant is restricted to those duties enumerated in the statute.

In 1973, concurrent with the Legislature's passage of the Residential Landlord-Tenant Act of 1973, the Washington Supreme Court recognized the theory of an implied

---

[2]Aspon argues that the word "premises" which is defined in RCW 59.18.030 indicates the Legislature did not intend to restrict a landlord's duties to those enumerated. We reject this argument.

warranty of habitability, and held that breach of the implied warranty is a valid defense in an unlawful detainer action. *Foisy v. Wyman,* 83 Wn.2d 22, 28, 515 P.2d 160 (1973). The court reasoned that "[a]ny realistic analysis of the lessor-lessee or landlord-tenant situation leads to the conclusion that the tenant's promise to pay rent is in exchange for the landlord's promise to provide a liveable dwelling." *Foisy,* at 27. The court commented that its decision was "reinforced" by the newly passed Residential Landlord-Tenant Act of 1973. *Foisy,* at 28. Since the duty allegedly violated by the landlord in *Foisy,* compliance with housing codes, was encompassed by RCW 59.18.060(1), the decision provides no guidance as to the existence of duties not specifically enumerated in RCW 59.18.060. Moreover, the Residential Landlord-Tenant Act of 1973 and the *Foisy* decision appear to have developed independently. Thus, we cannot presume that the Legislature intended the act to restrict application of the implied warranty of habitability. *See generally Wichert v. Cardwell,* 117 Wn.2d 148, 154-56, 812 P.2d 858 (1991) (discussing construction of statutes in derogation of the common law). Nor can we presume that the *Foisy* court construed the act as giving rise to a general duty extending beyond the specific duties enumerated.

■■ The plain language of RCW 59.18.060 suggests that a landlord has a general duty to keep the premises fit for human habitation, in addition to the duties specifically enumerated in subsections (1) through (11). However, upon reviewing RCW 59.18.060 in its entirety, we believe that the Legislature intended the duties enumerated in subsections (1) through (11) to be comprehensive and, thus, exclusive. The enumerated duties include not only judicially created exceptions to the doctrine of caveat emptor, but also several duties having no foundation in the common law, such as the obligation to provide adequate locks. Furthermore, the Legislature specifically

provided that a landlord must keep structural aspects of buildings in good repair (RCW 59.18.060(2)) and keep common areas reasonably clean, sanitary, and safe from defects (RCW 59.18.060(3)), but did not provide that landlords must keep noncommon areas safe from defects. An inference therefore arises that the Legislature did not intend to impose a duty on landlords to keep noncommon areas safe from defects. "Under the principle of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the list of particulars is treated as exhaustive." S. Burnham, *Drafting Contracts* 83 (1987). *See Bradley v. Department of Labor & Indus.*, 52 Wn.2d 780, 329 P.2d 196 (1958). We conclude that the trial court did not err in refusing to instruct that a landlord has a duty to "keep the premises fit for human habitation." *See* RCW 59.18.060. In so holding, we disapprove of WPI 130.06.

■ We next address Aspon's assertion that the trial court erred in refusing to instruct on her claim that the Loomises negligently failed to make the pipe's defective condition safe. Under Washington common law, a landlord has no duty to repair noncommon areas absent an express covenant to repair. *Lincoln v. Farnkoff*, 26 Wn. App. 717, 719, 613 P.2d 1212 (1980). However, a landlord is liable to a tenant for damages caused by a concealed, dangerous condition known to the landlord. *Younger v. United States*, 662 F.2d 580, 582 (9th Cir. 1981); *see Thomas v. Housing Auth.*, 71 Wn.2d 69, 426 P.2d 836 (1967). Known otherwise as "the latent defect theory", a claim based on a concealed, dangerous condition known to the landlord is comprised of the following elements:

(1) latent or hidden defects in the leasehold
(2) that existed at the commencement of the leasehold
(3) of which the landlord had actual knowledge
(4) and of which the landlord failed to inform the tenant.

*Younger*, at 582. The latent defect theory does not impose upon the landlord any duty to discover obscure defects or

dangers. Nor does it impose any duty to repair a defective condition. Under the latent defect theory, the landlord is liable only for failing to inform the tenant of known dangers which are not likely to be discovered by the tenant. *Flannery v. Nelson*, 59 Wn.2d 120, 123, 366 P.2d 329 (1961). We therefore conclude that the Loomises had no common-law duty to discover or repair the defective pipe.[3]

Aspon argues that the Residential Landlord-Tenant Act of 1973 modified the common law to impose upon landlords a duty to discover and repair unsafe conditions. RCW 59.18.060(3) provides that landlords must keep *common areas* "reasonably clean, sanitary, and safe from defects". However, there is no provision creating a similar duty with respect to noncommon areas. Aspon relies on *O'Brien v. Detty*, 19 Wn. App. 620, 621, 576 P.2d 1334, *review denied*, 90 Wn.2d 1020 (1978), in which the court stated that the Residential Landlord-Tenant Act of 1973 "modified the common law so as to require decent, safe and sanitary housing." It appears that the court was merely summarizing what it believed to be the significance of the act, and erroneously cited to a specific provision, RCW 59.18.060(4), which concerns "control of infestation by insects, rodents, and other pests". In two decisions following *O'Brien*, the court reiterated the words "decent, safe, and sanitary". *Younger*, at 583; *Lincoln*, at 720. Similar wording is found, however, only in RCW 59.18.060(3), which provides that a landlord has a duty to keep "*any shared or common areas* reasonably clean, sanitary, and safe from defects". (Italics ours.) Since the laundry room area was not a common area, RCW

[3]Aspon asserts that the trial court refused to instruct that Loomises had a duty to repair the pipe because it found no evidence supporting an inference that Edward Loomis had *actual* knowledge of the defective pipe. We find no support for this assertion in the record. The court's instruction 12 set forth the elements of the latent defect theory, but required proof only of constructive as opposed to actual knowledge. The trial court apparently substituted constructive for actual knowledge based on RCW 59.18.060(5), which requires that a landlord know the conditions of the premises before leasing them to the tenant.

59.18.060 did not entitle Aspon to an instruction based on a landlord's duty to keep the area safe from defects. We conclude that the trial court did not err in refusing to instruct that Loomises had a duty to repair the pipe.[4]

Lastly, we address whether the trial court erred in admitting photographs of Aspon's breasts into evidence. ER 403 provides that relevant evidence may be excluded if its probative value is outweighed by the danger of an unfairly prejudicial effect. Aspon's counsel objected to photographs taken by Aspon's plastic surgeon showing both of her breasts fully exposed. She argued that the scarring was limited to Aspon's left breast, the photographs were not necessary or useful to the jury in its deliberation, and introducing them would cause Aspon needless embarrassment. The trial court admitted the photographs on the basis that viewing Aspon's permanent injuries in context with the rest of her body would be helpful to the jury and that the photographs, by themselves, were not prejudicial. We hold that the trial court made no error.

The judgment is affirmed.

SCHOLFIELD and FORREST, JJ., concur.

Review denied at 118 Wn.2d 1015 (1992).

---

[4]We reject Loomises' argument that the trial court's refusal to give the duty-to-repair instruction may be upheld on grounds that Aspon failed to propose proper jury instructions. *See Harris v. Groth*, 99 Wn.2d 438, 447, 663 P.2d 113 (1983) (trial court has no duty to revise proposed instruction to eliminate improper statements). Although Aspon's proposed instruction 2 improperly indicated that the court had already determined Loomises were aware of the pipe's dangerous condition, Aspon's counsel did propose revising the court's instruction 4 to indicate that a landlord has a duty to make a defective condition safe.