IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KIMBERLEY E. SCHMIDT,<br><br>     Appellant,<br><br>  v.<br><br>SHIRLEY KANKELFRITZ,<br><br>     Respondent,<br><br>SERVPRO INDUSTRIES, INC., a foreign corporation, SERVPRO OF LYNNWOOD,<br><br>     Defendant. | No. 83247-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Kimberley Schmidt sued her landlord, Shirley Kankelfritz, after Schmidt discovered mold in the interior cavity of her bathroom wall following a repair. Schmidt claimed that Kankelfritz was negligent in the management of the unit and breached the common law implied warranty of habitability. Schmidt appeals the summary judgment dismissal of her claims. Because there is no genuine issue of material fact, we affirm.

FACTS

Schmidt rented a basement apartment unit in Kankelfritz' Lynnwood home from October 2001 to March 2016. The two had no written lease agreement, but

Citations and pincites are based on the Westlaw online version of the cited material

Schmidt paid $500 each month in rent, which was raised to $530 in March 2016. During this period, Kankelfritz did not conduct detailed inspections of the unit, but did conduct visual inspections, in part, to inspect the general condition whenever she collected rent or was otherwise invited in.

Just after midnight on March 21, 2016, Schmidt woke up to a "loud noise" and water "gushing" over the floor. Schmidt discovered the water was coming from near her kitchen sink. The water was coming from a broken dishwasher hose. Schmidt ran to the front door of the home and alerted Kankelfritz to the flooding. Kankelfritz immediately turned off the main water line. Water had seeped from the unit's kitchen into the bedroom, bathroom, and living room.

Later that morning, Kankelfritz contacted her insurance company and ServPro Lynnwood, who arrived about 10 a.m. to repair the damage from the flood. While conducting repairs, ServPro removed sheet rock from the wall behind the toilet. At that time, mold was discovered on the interior cavity of the wall behind the sheetrock. Schmidt only saw the mold after the walls were removed and had not previously notified Kankelfritz of any mold issue.

Schmidt recalled telling Kankelfritz prior to the 2016 flood incident, "something about the toilet had black stuff in it, but that may not even be anything to do with mold." Schmidt also recalled previously telling Kankelfritz that Schmidt noticed "the walls were bulging a little in the bathroom." Schmidt did not say when or how she informed Kankelfritz of these issues or how Kankelfritz responded. Kankelfritz, however, explained that "[o]n the rare occasion [Schmidt] would alert me to an issue in her unit, I would always remedy her

2

concern immediately."

As to the mold found inside the walls, Kankelfritz declared she had no prior knowledge as it was completely hidden within the walls and she had no idea when it began to develop or what caused it.

Following the flood, Kankelfritz replaced the shower and toilet, but there was no damage to the cabinets or drywall that required replacement. Schmidt moved out of the unit immediately following the flood and never returned.

The unit had flooded once previously in 1995 after snowmelt caused water to leak into the bedroom. That leak did not impact any other room. The bedroom does not share a wall with the bathroom where mold was found in 2016. After the 1995 incident, Kankelfritz had drains installed and did not experience any flooding issues until the broken hose in 2016, more than 20 years later.

In March 2016, Schmidt filed suit against Kankelfritz, claiming negligence, premises liability, and a breach of the implied warranty of habitability.[1] Kankelfritz filed a motion for summary judgment on all claims. The trial court granted this motion. Schmidt appeals.

## DISCUSSION

## Standard of Review

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is

---

[1] Schmidt's suit included a claim of negligence against ServPro Industries, Inc. and ServPro of Lynnwood. That claim is not part of this appeal.

3

entitled to a judgment as a matter of law. Strauss,194 Wn.2d 300; CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

### Negligence

Schmidt asserts that Kankelfritz was negligent. In a negligence case, the plaintiff is required to prove (1) duty; (2) breach; (3) the causation; and (4) damages. Saralegui Blanco v. Gonzalez Sandoval, 197 Wn.2d 553, 557, 485 P.3d 326 (2021). A tenant may premise an action against a landlord under any of three legal theories: the Residential Landlord-Tenant Act (RLTA), the rental agreement, or the common law. Landis & Landis Const., LLC v. Nation, 171 Wn. App. 157, 162, 286 P.3d 979 (2012) (citing Dexheimer v. CDS, Inc., 104 Wn. App. 464, 467, 470, 17 P.3d 641 (2001)). Here, the parties did not have a rental agreement, precluding an action based on such an agreement.

*A. Residential Landlord-Tenant Act*

Under the RLTA, landlords have a duty to "keep the premises fit for human habitation" at all times. RCW 59.18.060. Alongside that general duty, the act outlines several specific requirements for keeping the premises fit. RCW 59.18.060(1)-(15). Under the RLTA, the duty does not extend beyond specific duties statutorily enumerated. Aspon v. Loomis, 62 Wn. App. 818, 825, 816 P.2d 751 (1991).

In her brief, Schmidt simply provides the enumerated list of requirements included in the statute but fails to allege specifically which section Kankelfritz violated. None of the enumerated requirements address mold in particular, though subsection (2) requires landlords to maintain structural components including walls, subsection (5) requires landlords to "make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy," and subsection (8) requires landlords to maintain all plumbing supplied by the landlord in reasonably good working order. RCW 59.18.060 (2), (5), (8). "Upon notice, the landlord is obliged to take swift action—between 1 and 10 days, based on the type of risk to the tenant—to remedy the defective condition." Landis, 171 Wn. App. at 161 (citing RCW 59.18.070)).

Schmidt alleges in her complaint that "Kankelfritz knew or should have known of the presence of toxic mold existing in and contaminating the leased premises." Schmidt, herself, despite living in the unit for 15 years, only discovered the mold after the sheetrock was removed in the bathroom due to flooding caused by the broken dishwasher hose. Schmidt did not establish that Kankelfritz knew of the mold prior to Schmidt's own discovery. Further, Kankelfritz commenced remedial action by calling professionals the same morning the flooding occurred. Schmidt did not raise a genuine issue of material fact as to whether Kankelfritz breached her duty under the RLTA.

*B. Premises Liability*

Under a premises liability theory, a landowner owes an individual a duty of

care based on the individual's status upon the land.  Curtis v. Lein, 169 Wn.2d 884, 890, 239 P.3d 1078 (2010) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 128, 875 P.2d 621 (1994)).  A tenant is an invitee.  Curtis, 169 Wn.2d at 890 (citing Musci v. Graoch Assocs. Ltd. P'ship. No. 12, 144 Wn.2d 847, 855, 31 P.3d 684 (2001)).  The Washington State Supreme Court has adopted the Restatement (Second) of torts § 343 (1965) view of a landowner's duty of care to an invitee:

> [A] landowner is subject to liability for harm caused to his tenants by a condition on the land, if the landowner (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to tenants; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect the tenant against danger.

Curtis, 169 Wn.2d at 890 (alteration in original) (citing Musci, 144 Wn.2d at 855-56)).  Reasonable care requires the landowner to inspect for dangerous conditions, "followed by such repair, safeguards, or warning as may be reasonably necessary for [a tenant's] protection under the circumstances."  Id.

Schmidt alleges that Kankelfritz had a duty to inspect the unit and breached that duty.  Schmidt attempts to establish this duty and breach by presenting the declaration of Karla Tussing as evidence.  Tussing has been a "property manager for 15 years" and signed her declaration in Surprise, Arizona.[2]  She submitted a declaration based her "personal knowledge, education, and experience in the field of property management."  She is "knowledgeable of the

---

[2] Schmidt asserts that Tussing did the majority of her property management in the Puget Sound area, but where Tussing managed property is not stated in Tussing's declaration or anywhere else in the record.

industries customs, legal compliance, practices and responsibilities that landlords or property owners have to tenants or individuals residing in the landlords' property in exchange for rent money." Tussing concludes that "[i]f inspections would have been done regularly the presence of mold or the problem area causing the mold would have been rooted out on a more probable than not basis." While Tussing has experience in managing properties, Tussing does not provide the foundation to opine on mold detection generally or establish that she has any knowledge of where the mold was located in Schmidt's unit or how it was detected.

"An expert must stay within the area of his expertise." Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 102, 882 P.2d 703 (1994). "In the absence of evidence that the witness has the specialized training or experience necessary to draw the inference offered, the opinion lacks a proper foundation and is not admissible under ER 702." Simmons v. City of Othello, 199 Wn. App. 384, 392-93, 399 P.3d 546 (2017) (citing State v. Farr-Lenzini, 93 Wn. App. 453, 461, 970 P.2d 313 (1999)). An opinion must also be supported by sufficient foundational facts. Queen City, 126 Wn.2d at 104. "Where there is no basis for the expert opinion other than theoretical speculation, the expert testimony should be excluded." Id. at 103. Tussing offers nothing more than theoretical speculation that some sort of regular inspection would have detected the mold or the cause of the mold that was not otherwise observable until walls were removed. Accordingly, we disregard her unsupported opinion.

Schmidt has presented no admissible supporting evidence that Kankelfritz

failed to exercise reasonable care that would have discovered the hidden mold.

Implied Warranty of Habitability

Schmidt next contends that Kankelfritz breached the common law implied warranty of habitability by failing to inspect the unit, which Schmidt argues would have uncovered the mold.

Under the common law, a landlord generally has no duty to repair noncommon areas without an express covenant to repair.  Martini v. Post, 178 Wn. App. 153, 167, 313 P.3d 473 (2013) (citing Aspon v. Loomis, 62 Wn. App. at 826)).  Landlords, however, are subject to liability for harm to the tenant that is caused by latent or hidden defects in the leasehold that existed at the commencement of the leasehold of which the landlord had actual knowledge and failed to inform the tenant of.  Id.

Here, Schmidt has presented no evidence that the mold hidden behind the bathroom wall existed at the time she began renting the basement apartment. Schmidt conceded in her deposition that she herself only became aware of the mold after the sheetrock had been removed, allowing a view inside the cavity of the wall.

Though Schmidt informed Kankelfritz of "black stuff" inside the toilet bowl, Schmidt herself stated it "may not even be anything to do with mold" and did not explain when she told Kankelfritz or how Kankelfritz responded.  Also, while Schmidt told Kankelfritz about a little bulge on a bathroom wall, Schmidt provides little detail as to the location of the bulge, what the bulge looked like, when she noticed it and told Kankelfritz, or how Kankelfritz responded.  Kankelfritz,

however, declared that on the rare occasion Schmitz would alert Kankelfritz to an issue in the unit, Kankelfritz would always remedy her concern immediately.

Schmidt also argues that the 1995 leak into the bedroom could have been when the mold began and that it was unreasonable for Kankelfritz to not inspect the unit for mold regularly after that event. However, Schmidt's suggestion that the 1995 leak that did not impact any rooms other than the bedroom was related to the mold discovered in 2016 is nothing more than pure speculation.

Schmidt has not presented supporting evidence that Kankelfritz had actual knowledge of mold and failed to inform the tenant.

CONCLUSION

The trial court did not err in granting the defendant's motion for summary judgment.

We affirm.

_____
Coluum, J.

WE CONCUR:

_____     _____
Birk, J.                                                      Brennan, J.