[No. 18913-9-III. Division Three. January 25, 2001.]

CHRIS DEXHEIMER, ET AL., *Respondents*, v. CDS, INC., *Defendant*, RALPH GUTHRIE, ET AL., *Appellants*.

466

*Dudley R. Forster* and *Randall R. Adams*, for appellants.

*Frederic G. Fancher* and *Daniel E. Huntington* (of *Richter-Wimberley*), for respondents.

SWEENEY, J. — A tenant may premise an action against a landlord under any of three legal theories: the Residential Landlord-Tenant Act of 1973 (RLTA), the rental agreement, or the common law. *Howard v. Horn*, 61 Wn. App. 520, 522-23, 810 P.2d 1387 (1991). But not all three theories allow for the recovery of monetary damages. Here, the court instructed the jury on all three theories. And the jury awarded full traditional tort damages.

The dispositive questions presented are first, whether the trial court erred by permitting the jury to award monetary damages for violations of the RLTA. And second, whether the trial court erred by instructing the jury on the terms of the lease when breach of contract was not pleaded. We conclude that it did, and reverse and remand for a new trial on liability only.

## FACTS

Ralph Guthrie leased a duplex to Chris and Melissa

Dexheimer. The Dexheimers participate in a federally funded rental assistance program. The Spokane Housing Authority (SHA) inspected the duplex pursuant to the rental assistance program and found four "unit deficiencies." The deficiencies included a wheel on the left side of the duplex's garage door; it was out of its track. A bolt from the bracket holding the wheel to the panel was also missing. The SHA inspector reinserted the wheel into the track. Mr. Dexheimer installed the missing bolt.

SHA inspected the duplex six days later and concluded that the deficiencies had been corrected. Mrs. Dexheimer signed off on the inspection form. And the Dexheimers moved in.

The garage door failed less than four months later. It came out of its right-side track as Mr. Dexheimer attempted to open it. The door struck and seriously injured him. The door failed because it was not properly aligned.

The Dexheimers sued Mr. Guthrie. They alleged that he was negligent in failing to maintain and repair the garage door; and the door was not installed, maintained, and repaired in proper working condition. The Dexheimers also sued the maker of the garage door, CDS, Inc., but later settled with CDS.

The court instructed the jury on a number of the duties required by the RLTA (RCW 59.18.060[1]). Instruction 15. It also instructed on duties imposed on landlords by the

---

[1] RCW 59.18.060 provides in part:

"The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:

". . . .

"(2) Maintain the roofs, floors, walls, chimneys, fireplaces, foundations, and all other structural components in reasonably good repair so as to be usable and capable of resisting any and all normal forces and loads to which they may be subjected;

". . . .

"(5) Except where the condition is attributable to normal wear and tear, make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy;

"(6) Provide reasonably adequate locks and furnish keys to the tenant;

federal rental assistance program. Instruction 17.[2]

Mr. Guthrie objected to both instructions because they failed to limit the Dexheimers' remedies to those provided by the RLTA and instead allowed the jury to award traditional tort damages.

The jury found Mr. Guthrie was negligent and awarded the Dexheimers $35,000 for past economic damages, $65,000 for noneconomic damages, and $150,000 for future economic damages.

## DISCUSSION

### 1. RLTA as a Basis for Tort Liability.

Mr. Guthrie contends that Instruction 15 allowed the Dexheimers to maintain a tort action based on the RLTA duties. And the RLTA's remedies are limited to those provided by the statute. He further argued that any claim requires notice to the landlord and an opportunity to repair.

In pertinent part, Instruction 15 read:

> To establish negligence for breach of a duty owed by a landlord to a tenant, the Plaintiffs have the burden of proving that the Defendant breached one or more of the following duties:
>
> (1) To keep the premises fit for human habitation;
>
> (2) Maintain the roofs, floors, walls, chimneys, fireplaces, foundations, and all other structural components in reasonably good repair so as to be usable and capable of resisting any and

---

"(7) Maintain all electrical, plumbing, heating, and other facilities and appliances supplied by him in reasonably good working order[.]"

[2] Instruction 17 states:

"The lease between the plaintiff and defendant states 'the landlord shall maintain the dwelling unit, equipment and appliances, and common area and facilities to provide decent, safe and sanitary housing in accordance with the Housing Quality Standards for the Housing Voucher Program, . . .' The Housing Quality Standards state, 'Structure and material—(1) performance requirement. The dwelling unit shall be structurally sound so as not to pose any threat to the health and safety of the occupants and so as to protect the occupants from the environment.'"

all normal forces and loads to which they may be subjected;

(3) Except when the condition is attributable to normal wear and tear, make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy;

(4) To provide reasonably adequate locks and furnish keys to the tenant;

(5) To maintain all electrical, plumbing, heating, and other facilities and appliances supplied by the landlord in reasonably good working order[. ]

■ The question presented is one of law. So the standard of review is de novo. *W. Telepage, Inc. v. City of Tacoma*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000).

■ A tenant may premise an action against a landlord based on three premises: the rental agreement, the common law, and the RLTA. *Howard v. Horn*, 61 Wn. App. 520, 522-23, 810 P.2d 1387 (1991). The RLTA is codified in chapter 59.18 RCW. The Dexheimers' amended complaint spells out their legal theory against Mr. Guthrie. Their theory is that Mr. Guthrie negligently maintained the garage door:

> The liability creating occurrence was the direct result of Defendants Ralph and Gertrude Guthrie, as landlords for the above referenced premises, not maintaining and repairing all structural components of the rental property, such that the components would withstand any and all normal uses. Specifically, the garage door of the rental unit at 11714 East Railroad Ave., Spokane, WA was not installed, maintained, and repaired in proper working condition. Said failure of the Defendants was *negligent* and a proximate cause of the Plaintiff's injuries.

(Emphasis added.)

■ The court's Instruction 15 is a modified version of 6 *Washington Pattern Jury Instructions: Civil* 130.06, at 133 (3d ed. Supp. 1994) (WPI). WPI 130.06 with minor changes reflects RCW 59.18.060.[3] The instruction allows the jury to

---

[3] WPI 130.06 lists the landlord's 11 duties under RCW 59.18.060.

find Mr. Guthrie negligent if it finds he violated one or more of the duties imposed by RCW 59.18.060. Instruction 15. The jury was then allowed to find that Mr. Guthrie's negligence proximately caused Mr. Dexheimer's injury. Instruction 13. And finally, the instructions allowed the jury to award money damages for the injury. Instruction 24. Read together, the jury could then award special and general tort damages for Mr. Guthrie's failure to comply with the RLTA. This was error.

The RLTA provides remedies for a landlord's violation. RCW 59.18.090. "Those remedies, however, are limited to (1) the tenant's right to repair and deduct the cost from the rent, (2) a decrease in the rent based upon the diminished value of the premises, (3) payment of rent into a trust account, or (4) termination of the tenancy." *Howard*, 61 Wn. App. at 524-25 (citing RCW 59.18.110(2), .115, .120).[4]

The RLTA represents a series of compromises between the interest of the modern-day landlord and the tenant. The tenant benefits from the imposition of specific affirmative duties imposed upon the landlord. Those duties effect the RLTA's implied warranty of habitability. RCW 59.18.060. And the RLTA remedies provide tenants with far more protection than existed at common law. William H. Clarke, *Washington's Implied Warranty of Habitability: Reform or Illusion?*, 14 GONZ. L. REV. 1, 22-24 (1978). The landlord benefits because while the RLTA imposes a lengthy list of specific duties, it also limits the remedies available to the tenant for the breach of those duties. *Howard*, 61 Wn. App. at 524-25.

Despite this, the court in *Lincoln v. Farnkoff*[5] held that the trial court erred when it refused to instruct the jury on the landlord's statutory duty to repair. There, the tenant

---

[4] *See also Aspon v. Loomis*, 62 Wn. App. 818, 825-26, 816 P.2d 751 (1991) (holding a landlord's duties under the RLTA are limited to those specifically enumerated); *State v. Schwab*, 103 Wn.2d 542, 550-51, 693 P.2d 108 (1985) (RLTA does not provide a Consumer Protection Act cause of action to tenants; instead the RLTA "delineat[es] the specific rights, duties, and remedies of both landlords and tenants").

[5] 26 Wn. App. 717, 720, 613 P.2d 1212 (1980).

was injured when a concrete block serving as a step tipped backwards and caused her to fall. *Lincoln v. Farnkoff*, 26 Wn. App. 717, 719, 613 P.2d 1212 (1980). The trial court refused to instruct the jury on a landlord's duties under RCW 59.18.060. *Id.* This court held that the jury should have been instructed on a landlord's duty to maintain the premises in "reasonably good repair," as per RCW 59.18.060(2). *Id.* at 719-20. The opinion does not mention whether the plaintiff could then recover general damages for personal injuries under the RLTA. To the extent that *Lincoln v. Farnkoff* permits such a recovery, it is wrong.

Monetary damages are not available for a breach of a landlord's duties under the RLTA. *State v. Schwab*, 103 Wn.2d 542, 550-51, 693 P.2d 108 (1985); *Aspon v. Loomis*, 62 Wn. App. 818, 825-26, 816 P.2d 751 (1991); *Howard*, 61 Wn. App. at 524-25. The court erred by allowing the Dexheimers to recover money damages for violations of RCW 59.18.060.

■ ■ Defective jury instructions require reversal only when the defect was prejudicial. *MacSuga v. Spokane County*, 97 Wn. App. 435, 441, 983 P.2d 1167 (1999). "Prejudice means the outcome of the trial was affected." *Id.* It is impossible to ascertain whether the jury awarded monetary damages based on a breach of the RLTA. Mr. Guthrie was prejudiced.

2. Contract Duties Under the Rental Agreement.

■ Mr. Guthrie next contends the court erred by giving Instruction 17 for several reasons. First, Mr. Guthrie argues the instruction deals with duties arising only under the rental agreement (a contract). And the Dexheimers did not plead breach of contract. Second, Instruction 17 was misleading because it gave only a portion of the federal housing quality standards. He contends the entire section on housing quality standards should have been given. Third, he argues that violation of the housing quality standards will not support a cause of action in tort.

We agree that the duties spelled out in Instruction 17 are

all contractual. And we also agree that the Dexheimers did not plead breach of contract. We need not reach Mr. Guthrie's other contentions because this issue is dispositive.

■ ■ The complaint alleged negligence, plain and simple. But Instruction 17 instructed the jury on federal law that had been incorporated in the lease agreement:

> The lease between the plaintiff and defendant states "the landlord shall maintain the dwelling unit, equipment and appliances, and common area and facilities to provide decent, safe and sanitary housing in accordance with the Housing Quality Standards for the Housing Voucher Program, . . . " The Housing Quality Standards state, "Structure and material— (1) performance requirement. The dwelling unit shall be structurally sound so as not to pose any threat to the health and safety of the occupants and so as to protect the occupants from the environment."

The quoted section of the Housing Quality Standards (HQS) comes from 24 C.F.R. § 982.401(g) (2000).[6] The court quoted subsection (1) "Performance requirement," but left out subsection (2) "Acceptability criteria":

> (2) Acceptability criteria.
>
> (i) Ceilings, walls, and floors must not have any serious defects such as severe bulging or leaning, large holes, loose surface materials, severe buckling, missing parts, or other serious damage.
>
> (ii) The roof must be structurally sound and weathertight.
>
> (iii) The exterior wall structure and surface must not have any serious defects such as serious leaning, buckling, sagging, large holes, or defects that may result in air infiltration or vermin infestation.
>
> (iv) The condition and equipment of interior and exterior stairs, halls, porches, walkways, etc., must not present a danger of tripping and falling. For example, broken or missing steps or loose boards are unacceptable.

---

[6] At the time the lease was entered into in 1994, the Housing Quality Standards were codified at 24 C.F.R. § 882.109 (1994).

(v) Elevators must be working and safe.

24 C.F.R. § 982.401(g)(2).

Federal regulations expressly label violation of the HQS as a breach of contract: "Any of the following actions by the owner . . . is a *breach of the HAP contract* by the owner: (1) If the owner has violated any obligation . . . including the owner's obligation to maintain the unit in accordance with the HQS." 24 C.F.R. § 982.453(a) (2000) (emphasis added). The tenant's remedies are contractual: "The tenant may exercise any right or remedy against the owner *under the lease* between the tenant and the owner. . . ." 24 C.F.R. § 982.456(b)(2) (2000) (emphasis added).

The regulation gives the tenant a remedy, but the cause of action is in contract. Again, the Dexheimers' complaint alleges only negligence.

A breach of contract does not generally give rise to an action in tort. *Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 230, 797 P.2d 477 (1990). Only *"if a duty exists independently of the performance of the contract"* can a contract provide the basis for a tort claim. *Id.* (emphasis added). The landlord has no independent duty to comply with the HQS. The obligation then remains exclusively contractual.

Here, even if the Dexheimers had pleaded breach of contract, the court's instruction was misleading. The statutory construction rule of ejusdem generis states "general terms, when used in conjunction with specific terms, should be deemed to incorporate only those things similar in nature or 'comparable to' the specific terms." *Beckman v. Dep't of Soc. & Health Servs.*, 102 Wn. App. 687, 692, 11 P.3d 313 (2000).[7]

The acceptability criteria found in subsection (2) are specific terms that flesh out the general terms in subsection (1). Therefore, under the rule of ejusdem generis, the

---

[7] *See also John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 883-84, 558 P.2d 1342 (1976); *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970, 977 P.2d 554 (1999).

general language requiring a landlord to "provide decent, safe and sanitary housing" should incorporate only the type of violations specifically listed in subsection (2).

### 3. Summary—Landlord's Duties.

Only three legal theories support a tenant's claim against a landlord: the rental agreement, the common law, and the RLTA. *Howard v. Horn*, 61 Wn. App. 520, 522-23, 810 P.2d 1387 (1991). The allowable remedies for a violation of the RLTA are limited and do not include monetary damages. *Id.* at 524-25 (citing RCW 59.18.110(2), .115, .120). The court therefore erred by allowing the jury to award monetary damages based on a breach of the RLTA.

The Dexheimers pleaded only negligence—not breach of the rental agreement. The court therefore erred by instructing the jury on the landlord's contractual duties.

A tenant's common law claim is also limited. A tenant may recover from his or her landlord for injuries caused by a latent defect known to the landlord. *Howard*, 61 Wn. App. at 523. The landlord's duty there is only to warn of the latent defect; there is no common law duty to repair. *Aspon*, 62 Wn. App. at 826-27. Here, the jury was given an independent instruction on this common law duty. Instruction 16. That instruction tracked the Dexheimers' complaint and was therefore proper.

### 4. Excessive Damage Award.

Mr. Guthrie contends that the jury's damage award was improper for two reasons. First, the evidence did not support the award of $150,000 for future economic damages. Second, the jury's award of $35,000 for past economic damages and $150,000 for future economic damages is the result of passion and prejudice.

A jury's verdict will be overturned only if it is " 'clearly unsupported by substantial evidence.' " *Herring v. Dep't of Soc. & Health Servs.*, 81 Wn. App. 1, 15-16, 914 P.2d 67 (1996) (quoting *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 107-08, 864 P.2d 937 (1994)). " 'The inquiry on appeal is limited to whether the evidence presented was

sufficient to sustain the jury's verdict.' " *Id.* at 16 (quoting *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 916, 792 P.2d 520 (1990)). Mathematical exactness is not required. *Erdman v. Lower Yakima Valley B.P.O.E. Lodge No. 2112*, 41 Wn. App. 197, 208, 704 P.2d 150 (1985). A jury's verdict is strengthened by a trial court's denial of a motion for a new trial. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 330, 858 P.2d 1054 (1993).

The Dexheimers presented evidence of future damages through the testimony of two doctors. Dr. Duncan Lahtinen testified Mr. Dexheimer's future medical costs to be $2,000 to $3,000 per year for the rest of his life. The average life expectancy of a man his age was stated at 43.20 years. Dr. Paul Domitor testified Mr. Dexheimer would benefit from additional treatment over a six-month period at a cost of approximately $4,000.

Multiplying the top end of the estimated yearly cost of treatment ($3,000) by Mr. Dexheimer's average life expectancy (43.20 years) yields future economic damages of $129,600. Adding $4,000 for the six months of additional treatment brings the total to $133,600.

Mr. Dexheimer was 31 years old at trial. Mr. Dexheimer would live to the approximate age of 74 based on the life expectancy given in Instruction 23. Instruction 23, however, states: "This one factor is not controlling, but should be considered in connection with all the other evidence bearing on the same question, such as that pertaining to the health, habits, and activity of the person whose life expectancy is in question." Adding only five and a half years to Mr. Dexheimer's life expectancy, thereby estimating his life expectancy at approximately 80, brings the total up to $150,000. Simply put, there is sufficient evidence here to support the jury's award of future economic damages.

■ " 'Before passion or prejudice can justify reduction of a jury verdict, it must be of such manifest clarity as to make it unmistakable.' " *Miller v. Yates*, 67 Wn. App. 120, 124, 834 P.2d 36 (1992) (quoting *Jacobs v. Calvary Cemetery & Mausoleum*, 53 Wn. App. 45, 49, 765 P.2d 334 (1988)).

The jury's judgment as to the amount of damages should be overturned in only the most extraordinary circumstances. *Id.*

 The evidence adequately supported the economic damages awarded to the Dexheimers. The award for future economic damages was clearly within the realm of the evidence. Mr. Guthrie's argument against the award for past economic damages is likewise without merit.

The Dexheimers presented actual past medical bills totaling $30,920.33. One of the bills was from Dr. John Lloyd in the amount of $17,369.75. However, Dr. Lloyd testified the actual amount of the bill with interest was $21,963.84. Adding the amount of interest ($4,594.09) to the past medical bills submitted by the Dexheimers ($30,920.33) equals $35,514.42. Hence, contrary to Mr. Guthrie's claims, the jury's award of past economic damages is supported by the evidence and not the result of passion or prejudice. Moreover, the Dexheimers stipulated to a reduction in the award of past economic damages to $30,920.33.

5. New Trial Limited to Liability.

 The Dexheimers contend that the only issue on retrial should be liability. Issues should be limited in those cases when "the original issues were distinct and separate from each other and that justice does not require the resubmission of the whole case to the jury." *Keegan v. Grant County Pub. Util. Dist. No. 2*, 34 Wn. App. 274, 285, 661 P.2d 146 (1983). A new trial can also be limited to liability when there is no serious challenge to the question of damages. *See France v. Peck*, 71 Wn.2d 592, 599, 430 P.2d 513 (1967).

Here, the issue of liability was distinct from damages. And Mr. Guthrie's challenge to the damage award is without merit.

The judgment of the trial court is reversed and the case remanded for a new trial on liability only.

KURTZ, C.J., and BROWN, J., concur.