[No. 19485-0-III. Division Three. June 19, 2001.]

SUSAN LIAN, *Respondent*, v. JOHN STALICK III, ET AL., *Appellants*.

814

*Byron L. McLean*, for appellants.

*Lloyd A. Herman* (of *Lloyd Herman & Associates*), for respondent.

BROWN, A.C.J. — Susan White, formerly Susan Lian, fell on the obviously decrepit steps of her apartment. She sued her landlord for injuries. Concluding the landlord breached the warranty of habitability under the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW (RLTA), the trial court awarded Ms. White special and general damages. Under subsequent case law, the trial court erred when deciding the scope of remedies available for that breach. Damages were properly decided. We reverse and remand for proceedings to decide if liability exists under common law liability theories.

## FACTS

Jean Stalick (deceased) owned the Benson Motel Apartments, managed by her son, John Stalick III (collectively Mr. Stalick). Susan White occupied one unit. The steps in front of Ms. White's unit were decrepit, rotten, and inherently dangerous. Ms. White and the Stalicks were aware of the steps' poor condition. The trial court orally discussed allegations that complaints were made and repairs attempted and that the conditions caused Ms. White's fall and her injuries.

Ms. White filed a negligence complaint against Mr. Stalick. After a two-day bench trial, the trial court concluded Mr. Stalick breached the statutory duty to maintain safe premises under RCW 59.18.060. The trial court entered consistent findings of fact, conclusions of law, and

judgment in Ms. White's favor in the sum of $58,307.15 for special and general damages plus interest, attorney fees, and costs.

Mr. Stalick unsuccessfully filed a CR 59 motion for reconsideration, or alternatively, a new trial. Then, Mr. Stalick appealed.

## ISSUES

Did the trial court err by (A) concluding Mr. Stalick breached RLTA's warranty of habitability, (B) ordering remedies exceeding those specified in the RLTA, or (C) deciding the amount of damages, apart from liability.

### A. Warranty of Habitability

■ Generally, at common law, a landlord had neither a duty to provide habitable rental property nor a duty to repair rental property. *Hughes v. Chehalis Sch. Dist. No. 302*, 61 Wn.2d 222, 225, 377 P.2d 642 (1963). This approach was abandoned in *Foisy v. Wyman*, 83 Wn.2d 22, 28, 515 P.2d 160 (1973). The *Foisy* court granted an implied warranty of habitability, finding support in the newly enacted RLTA. *Id.* at 28-29.

The RLTA provision relating to habitability partly states:

> The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:
>
> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition substantially endangers or impairs the health or safety of the tenant;
>
> (2) Maintain the roofs, floors, walls, chimneys, fireplaces, foundations, and all other structural components in reasonably good repair so as to be usable and capable of resisting any and all normal forces and loads to which they may be subjected;

(3) Keep any shared or common areas reasonably clean, sanitary, and safe from defects increasing the hazards of fire or accident;

. . . .

(5) Except where the condition is attributable to normal wear and tear, make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy[.]

RCW 59.18.060.

■ RCW 59.18.060 does not create a generally actionable duty on the part of the landlord to "keep the premises fit for human habitation." *See Aspon v. Loomis*, 62 Wn. App. 818, 825-26, 816 P.2d 751 (1991). Rather, the landlord's duties are limited to those specifically listed in RCW 59.18.060. *Id*.

■■ Mr. Stalick, relying on *Klos v. Gockel*, 87 Wn.2d 567, 554 P.2d 1349 (1976), argues the RLTA warranty of habitability applies solely to defects rendering the dwelling uninhabitable. In *Klos*, a case involving new construction, the court reversed a judgment for violating the implied warranty of habitability on the basis that the owner-builder was not engaged in a commercial activity. *Id*. at 571. In dictum, the *Klos* court noted "that the house was habitable at all times." *Id*. But the *Klos* dictum does not constitute a rule that the aggrieved occupant must abandon the residence before invoking the implied warranty of liability. *Luxon v. Caviezel*, 42 Wn. App. 261, 266 n.4, 710 P.2d 809 (1985). Accordingly, we reject Mr. Stalick's proposed rule.

Relying on *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 415-16, 745 P.2d 1284 (1987), Mr. Stalick further contends the warranty of habitability does not apply to defects in exterior nonstructural elements adjacent to the dwelling. But *Stuart* does not offer the support Mr. Stalick seeks. In *Stuart*, the representatives of condominium owners brought suit against the owner-developer-builder-vendor of the complex for various construction defects affecting decks and access walkways. *Id*. at 410-11.

Regarding the access walkways, the Supreme Court reasoned "one could plausibly argue that the defects occurred in an essential portion of the dwelling itself." *Id.* at 417. "Such a defect could be said to render a home unit unfit for its intended purpose." *Id.* The *Stuart* court remanded the matter so the trial court could determine "which units owned by such plaintiffs had walkways so impaired that the sole means of access to the unit was dangerous to negotiate." *Id.* at 422.

While Ms. White aptly notes *Klos* and *Stuart* address solely the implied warranty of habitability in the builder/vendor to purchaser context, Mr. Stalick asserts correctly that *Stuart* has been cited with approval in cases involving the warranty of habitability under the RLTA. *See Howard v. Horn*, 61 Wn. App. 520, 525, 810 P.2d 1387 (1991); *see also Wright v. Miller*, 93 Wn. App. 189, 200-01, 963 P.2d 934 (1998), *review denied*, 138 Wn.2d 1017 (1999) (citing both *Stuart* and *Howard* with approval). But, in *Atherton Condominium Apartment-Owners Ass'n Board of Directors v. Blume Development Co.*, 115 Wn.2d 506, 519-22, 799 P.2d 250 (1990), the Supreme Court declined to apply *Stuart* as a general rule, reasoning it would interpret the applicability of the implied warranty of habitability on a "case-by-case basis." *Id.* at 520. Further, the policy grounds underlying the implied warranty of liability brought certain Uniform Building Code (UBC) code violations within the purview of the rule. *Id.* at 521-22. Specifically:

> The alleged building code violations are neither trivial or aesthetic concerns, nor those involving procedural breaches. Rather, the alleged building code violations concern fundamental fire safety provisions regarding the construction of Atherton's floors and ceilings. As such, the alleged defects are within the purview of the implied warranty of habitability and should not have been dismissed on summary judgment as a matter of law.

*Atherton*, 115 Wn.2d at 522 (footnotes omitted).

Therefore, application of the implied warranty of habitability depends on the particular circumstances. *Id.* at 520.

Generally, the warranty applies whenever the defects in a particular dwelling render it uninhabitable or pose an actual or potential safety hazard to its occupants. *Id.* at 522; *Stuart,* 109 Wn.2d at 416. Thus, Mr. Stalick's general proposition that any breach of the warranty of habitability must entail a defect so severe as to render the dwelling uninhabitable is unpersuasive.

■ Mr. Stalick's other contention, that the warranty of habitability does not apply because the steps were not a structural part of the building, is equally unpersuasive. In *Stuart,* the Supreme Court reasoned that defective access walkways would trigger a plausible habitability claim; a dwelling lacking a safe means of access is unfit for its intended purpose. *Stuart,* 109 Wn.2d at 417. Here, the rotting steps were directly attached and provided the sole means of access. The steps' condition was neither a trivial nor an aesthetic defect. *Atherton,* 115 Wn.2d at 522.

In the RLTA context, the defects must constitute violations of the landlord's specific duties as set forth under RCW 59.18.060. *Aspon,* 62 Wn. App. at 825-26. Here, the uncontroverted facts show the steps failed to comply with the UBC. RCW 59.18.060(1). Substantial evidence shows Mr. Stalick failed to maintain the steps, as a structural component of the dwelling, in good repair so as to render them usable and capable of withstanding normal forces and loads. RCW 59.18.060(2). And it is obvious Mr. Stalick failed to put the steps in as good condition, as required by law, as they should have been at the commencement of the tenancy. RCW 59.18.060(5). Accordingly, the trial court did not err in finding Mr. Stalick in breach of the implied warranty of habitability under RCW 59.18.060.

## B. Remedies and the RLTA

■■ We asked for additional briefing on *Dexheimer v. CDS, Inc.,* 104 Wn. App. 464, 17 P.3d 641 (2001), a case not available to the trial court when this matter was tried. In *Dexheimer* we held a tenant's remedies for a landlord's

violation of the RLTA are limited to " '(1) the tenant's right to repair and deduct the cost from the rent, (2) a decrease in the rent based upon the diminished value of the premises, (3) payment of rent into a trust account, or (4) termination of the tenancy.' " *Dexheimer*, 104 Wn. App. at 471 (quoting *Howard*, 61 Wn. App. at 524-25). Significantly:

> The RLTA represents a series of compromises between the interest of the modern-day landlord and the tenant. The tenant benefits from the imposition of specific affirmative duties imposed upon the landlord. Those duties effect the RLTA's implied warranty of habitability. RCW 59.18.060. And the RLTA remedies provide tenants with far more protection than existed at common law. William H. Clarke, *Washington's Implied Warranty of Habitability: Reform or Illusion?*, 14 GONZ. L. REV. 122-24 (1978). The landlord benefits because while the RLTA imposes a lengthy list of specific duties, it also limits the remedies available to the tenant for the breach of those duties. *Howard*, 61 Wn. App. at 524-25.

*Dexheimer*, 104 Wn. App. at 471.

In *Dexheimer*, the trial court committed reversible error by instructing the jury in a negligence action under *Washington Pattern Jury Instructions: Civil* 130.06, (3d ed. Supp. 1994) (WPI), the law of RCW 59.18.060. *Dexheimer*, 104 Wn. App. at 469-71. Here, the trial court relied on WPI 130.06 in its oral ruling when finding a breach of RCW 59.18.060. Report of Proceedings (RP) at 172. Although a bench trial, the situation is analogous to *Dexheimer*. Therefore, the trial court erred in awarding personal injury damages on the basis of a violation of RCW 59.18.060. While mentioning liability for tort in its oral opinion, the trial court did not grant relief under common law negligence, and did not consider contractual remedies because no contract existed here.

On the other hand, the *Dexheimer* court did not preclude a negligence claim premised on the breach of a common law duty. *Id.* at 475. Moreover, the RLTA does not bar a tenant from "pursuit of remedies otherwise provided him by law" for the landlord's failure to carry out the duties

required under RCW 59.18.060. RCW 59.18.070. Some legal commentators have interpreted "remedies otherwise provided by law" to include a tort action for personal injuries caused by the landlord's breach of the RLTA. William H. Clarke, *Washington's Implied Warranty of Habitability: Reform or Illusion?*, 14 GONZ. L. REV. 1, 39-40 (1978); William B. Stoebuck, *The Law Between Landlord and Tenant in Washington: Part I*, 49 WASH. L. REV. 291, 364-65 (1974).

Generally, Washington common law has limited the landlord's liability to a tenant for harm caused by:

"(1) latent or hidden defects in the leasehold

(2) that existed at the commencement of the leasehold

(3) of which the landlord had actual knowledge

(4) and of which the landlord failed to inform the tenant."

*Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994).

The latent defect theory does not impose upon the landlord any duty to discover obscure defects or dangers. Nor does it impose any duty to repair a defective condition. Under the latent defect theory, the landlord is liable only for failing to inform the tenant of known dangers which are not likely to be discovered by the tenant.

*Aspon*, 62 Wn. App. at 826-27 (citing *Flannery v. Nelson*, 59 Wn.2d 120, 123, 366 P.2d 329 (1961)). This general latent defect theory does not apply here because the obviously decrepit condition of the steps was a defect known to both Ms. White and Mr. Stalick.

But, Ms. White relied on *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 50, 914 P.2d 728 (1996) at the trial court and here to argue that Mr. Stalick had a duty to protect tenants and other invitees because the defect was so obvious he could anticipate this specific harm. The *Degel* court reasoned that a possessor of land is ordinarily not liable to invitees for known or obvious dangers, but liability will attach if the possessor should have anticipated the harm despite the invitee's knowledge or the obviousness of the danger. *Id*.

■■ *Degel*, which involved a natural body of water

adjacent to a mobile home park, was decided in a common-area type of context. *Id.* at 46-47. But the underlying common law rule on which *Degel* is founded, RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965), in appropriate circumstances, applies to portions of the premises under the control of a residential tenant. *See Anglin v. Oros*, 257 Ill. App. 3d 213, 628 N.E.2d 873, 876 (1993) (finding no duty of care where landlord did not know of defective storm door and would not have anticipated harm to residential tenant's daughter). The determinative issue is not so much the location of the defect but whether the dangerous defect was so obvious that the landlord should have anticipated the harm even though the tenant knew of the defective condition. *Id.* at 877. Consequently, a duty of care would exist "if the landlord should have anticipated the harm despite the tenant's knowledge of the danger or despite the obvious nature of the danger." *Degel*, 129 Wn.2d at 50.

The trial court did not clearly address *Degel* in its written findings. Before *Dexheimer*, that would have been superfluous because it is unnecessary to enter cumulative or alternative liability findings. But, the trial court did state in its oral opinion that the steps "are not in compliance with any measure of safety, whatsoever." RP at 173. The court further noted the steps were not only visibly decrepit for all to see, but that Mr. Stalick failed "to at least have some modicum of safety." RP at 176. "I find that these steps are inherently dangerous and do violate the code; that they interfered with the safe habitation of the home." RP at 176.

Ms. White mainly contends Mr. Stalick had a duty to use ordinary care when carrying out repairs on the premises. A botched voluntary repair by the landlord constitutes an affirmative act of negligence. *See Rossiter v. Moore*, 59 Wn.2d 722, 725-26, 370 P.2d 250 (1962). Moreover, RESTATEMENT (SECOND) OF PROPERTY: *Landlord & Tenant* § 17.6 (1977) states:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the

consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

(1) an implied warranty of habitability; or

(2) a duty created by statute or administrative regulation.

This rule applies even when the dangerous condition occurs in an area of the premises under the control of the tenant so long as the defect constitutes a violation of either the implied warranty of habitability or a duty imposed by statute or regulation. *See Thompson v. Crownover*, 259 Ga. 126, 381 S.E.2d 283, 285-86 (1989) (discussing room heater alleged to be in violation of code); *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147, 1152 (1994) (adopting RESTATEMENT (SECOND), *supra*, § 17.6 and holding private cause in action in landlord/tenant context may arise from landlord's breach of statutory duty); *Crowell v. McCaffrey*, 377 Mass. 443, 386 N.E.2d 1256, 1262 (1979) (applying rule to porch in violation of code and allegedly under control of tenant); *Shroades v. Rental Homes, Inc.*, 68 Ohio St. 2d 20, 427 N.E.2d 774, 776-78 (1981) (discussing RESTATEMENT (SECOND) rule in context of defective stairs leading directly to injured tenants' apartment and holding cause of action in tort existed for landlord's breach of Ohio's version of RLTA); *Watson v. Sellers*, 299 S.C. 426, 385 S.E.2d 369, 370, 373-75 (S.C. Ct. App. 1989) (citing RESTATEMENT (SECOND), *supra*, § 17.6 and South Carolina's RLTA with respect to tenant injuries caused by collapse of wooden front steps to mobile home).

We find these authorities persuasive and now adopt *Restatement (Second) of Property: Landlord & Tenant* § 17.6. The rule provides the tenant a remedy, supported by public policy, through which he or she may recover for injuries caused by the landlord's breach of the RLTA. As the *Shroades* court noted with respect to Ohio's version of the RLTA, the preventative remedies contained in the statute may be "grossly inadequate" to compensate tenants for physical injuries caused by the landlord's breach of the

statute. *Shroades,* 427 N.E.2d at 777-78.

As noted earlier, the record shows the blatantly dilapidated steps constituted multiple violations of landlord duties imposed under RCW 59.18.060. Ms. White testified that Mr. Stalick made a desultory attempt at repair. The trial court noted Ms. White's repair allegation but entered no findings or conclusions on the subject.

 Given all of the above, the best remedy is remand to the trial court to enter additional findings as may seem appropriate solely on the liability issues. *Bowman v. Webster,* 42 Wn.2d 129, 134-36, 253 P.2d 934 (1953). Additional reasons for remand are discussed in Part C. And, while we may affirm a trial court on an alternative theory if the briefing and the evidence support an appropriate theory, considering the impact of *Dexheimer,* in fairness to both sides, remand is indicated to allow clarification of liability theories. *See Cotton v. City of Elma,* 100 Wn. App. 685, 696, 998 P.2d 339 (reasoning appellate court can affirm on alternative theory), *review denied,* 141 Wn.2d 1029 (2000); *Dexheimer,* 104 Wn. App. at 470 (discussing common law negligence and lease liability). Further, because briefing and evidence exists in the record below supporting Ms. White's claim of negligent repair, and there is no indication that the lack of a specific finding on the issue was deliberate, we decline the dissent's invitation to infer a negative finding against Ms. White. *See Douglas N.W., Inc. v. Bill O'Brien & Sons Constr., Inc.,* 64 Wn. App. 661, 682, 828 P.2d 565 (1992). We defer to the trial court to resolve any fact and credibility issues regarding Ms. White's allegations on remand.

## C. Damages

 Now we discuss Mr. Stalick's motion for reconsideration/new trial on the issue of damages. If the damages award is tenable, further proceedings can focus solely on liability. We review a trial court's decision to grant or deny a CR 59(a) motion for reconsideration or new trial

under an abuse of discretion standard. *Kohfeld v. United Pac. Ins. Co.*, 85 Wn. App. 34, 40, 931 P.2d 911 (1997). "A trial court abuses its discretion when its decision is manifestly unreasonable, or based on untenable grounds or reasons." *Id*. Mr. Stalick argues three grounds for a new trial: first, excessiveness indicating the judgment resulted from passion or prejudice, CR 59(a)(5); second, insufficient evidence, CR 59(a)(7); and last, a lack of substantial justice, CR 59(a)(9).

■ "As to a motion for a new trial based on a claim of excessive damages, CR 59(a)(5), the damages must be so excessive as to unmistakably indicate that the verdict was the result of passion or prejudice." *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 486, 805 P.2d 800 (1991). The amount of damages must be "so excessive as to be outside the range of evidence or so great as to shock the court's conscience." *Id*. at 487 (citing *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 531, 554 P.2d 1041 (1976)). And the passion or prejudice "must be of such manifest clarity as to make it unmistakable." *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 836, 699 P.2d 1230 (1985) (citing *James v. Robeck*, 79 Wn.2d 864, 870, 490 P.2d 878 (1971)).

■ Regarding lack of evidence, we view the evidence in the record in the light most favorable to the nonmoving party to determine whether, as a matter of law, there is no substantial evidence or reasonable inferences to sustain the verdict for the nonmoving party. *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992). Evidence is substantial when it is of sufficient quantity to " 'convince an unprejudiced, thinking mind of the truth of the declared premise.' " *Nord*, 116 Wn.2d at 486 (quoting *Cowsert v. Crowley Maritime Corp.*, 101 Wn.2d 402, 405, 680 P.2d 46 (1984)).

■ Here, Ms. White testified as to the circumstances of the fall, her injuries related to it, and tried to distinguish injuries sustained in the fall from any injuries incurred before or after. Expert medical testimony and documentation supported the $18,000 in special damages related to

the fall. Mr. Stalick presented no expert medical testimony challenging the necessity or reasonableness of Ms. White's medical treatment. *See Palmer v. Jensen*, 132 Wn.2d 193, 200, 937 P.2d 597 (1997). Moreover, "a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages." *Id.* at 201. Ms. White's testimony added to the medical evidence establishes a basis for general damages. Thus, substantial evidence supported the awards for both special and general damages.

The trial court granted $30,000 for Ms. White's pain and suffering prior to surgery and $10,000 for pain and suffering that followed after discussing supporting evidence in the record. It concluded general damages for pain and suffering and loss of enjoyment of life were appropriate. The damage award was not so "flagrantly outrageous and extravagant" as to manifest passion or prejudice. *Bingaman*, 103 Wn.2d at 837 (citing *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 395, 261 P.2d 692 (1953)). Given the trial court's discussion of the evidence, and its careful consideration of the extent of Ms. White's damages, we find no error. *See Nord*, 116 Wn.2d at 487.

Granting a new trial for lack of substantial justice, CR 59(a)(9), should be rare, given the other broad grounds available under CR 59. *See Kohfeld*, 85 Wn. App. at 41. The weight of evidence and questions of credibility are the province of the finder of fact. *See Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 34, 891 P.2d 29 (1995). The trial court plainly found Ms. White's version of events and supporting evidence persuasive and rejected Mr. Stalick's contradicting evidence. Thus, there was no error.

## CONCLUSION

The trial court decided liability for a breach of the warranty of habitability in the RLTA, but did not properly relate the breach to remedies available according to later decided case law. Thus, in fairness, remand for clarification

of the trial court's liability theory or theories supporting the remedies is required. Damage amounts were properly decided and remand is limited to establishing the extent of liability, if any, under common law liability theories for those damages. Accordingly, we reverse and remand for proceedings consistent with this opinion.

KATO, J., concurs.

SWEENEY, J. (dissenting) — Susan Lian White fell from wooden steps leading into her apartment—and only her apartment—on July 3, 1996.

She sued John Stalick III and Jean Stalick (now deceased) for personal injury. In relevant part her complaint alleged that the Stalicks "operated and maintained the residential premises located at 1603 S. Royal, Apartment # 1, in a negligent and careless manner so as to cause the Plaintiff's injuries." Clerk's Papers (CP) at 5.

The parties do not dispute that the stairway serviced only Ms. White's apartment. It was not, therefore, a common area of this apartment complex.

The case was fully tried to the court. And following a favorable decision, Ms. White's attorney prepared findings of fact and conclusions of law, on his stationery, which the judge signed on May 12, 2000.

The findings of fact pertinent to our review are:

2. The steps in front of the unit of the Benson Motel Apartments occupied by the plaintiff Susan C. White were inherently dangerous and interfered with the safe habitation of the home;

3. The defendants, Jean Stalick and John Stalick, III, and the plaintiff, Susan C. White, were aware of the poor condition of the steps;

4. On the evening of July 3, 1996, the plaintiff Susan C. White fell on the steps in front of her apartment unit and injured herself. The cause of her fall was the decrepit and rotten nature of the steps[.]

CP at 51.

The pertinent conclusions of law are:

1. The defendants, Jean Stalick and John Stalick, III, had a statutory duty to the plaintiff, Susan C. White, to keep the steps in front of her apartment unit in safe condition as a minimum for habitation. This duty, as imposed in RCW 59.18.060, further states:

The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:

(1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition substantially endangers or impairs the health or safety of the tenant;

2. While not a common area, the stairs in front of the plaintiff Susan C. White's apartment unit were a necessary element of habitation and thus the defendants still had a statutory duty to keep them in safe condition;

3. By not having the steps in a safe condition as a minimum for habitation, the defendants breached their duty to the plaintiff to comply with the code or even some modicum of safety;

. . . .

5. Judgment should be entered in favor of plaintiff Susan C. White (formerly Susan C. Lian) . . . .

CP at 52.

## STANDARD OF REVIEW

We review findings of fact to determine whether they are supported by substantial evidence. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). We review conclusions of law de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

The question before us is whether the court's conclusions of law support a judgment against the landlord for general,

common law tort damages. They do not, based on well established Washington law.

## LANDLORD LIABILITY AT COMMON LAW

A landlord's liability to the tenant, other than for a common area, is well settled. A landlord is liable for, and only for:

(1) latent or hidden defects in the leasehold

(2) that existed at the commencement of the leasehold

(3) of which the landlord had actual knowledge

(4) and of which the landlord failed to inform the tenant.

*Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994); *Charlton v. Day Island Marina, Inc.*, 46 Wn. App. 784, 788, 732 P.2d 1008 (1987); *Aspon v. Loomis*, 62 Wn. App. 818, 826-28, 816 P.2d 751 (1991); *Dexheimer v. CDS, Inc.*, 104 Wn. App. 464, 475, 17 P.3d 641 (2001).

Any *affirmative duty* a landlord may have to maintain rental property does not extend to noncommon areas. The tenant is limited at common law to the "latent defect theory." *Aspon*, 62 Wn. App. at 826.

The Residential Landlord-Tenant Act[1] (RLTA) imposes a warranty of habitability. But it also specifies the remedy:

> Failure to carry out these duties gives rise to certain statutory remedies which are premised on the landlord having notice of the defect. Those remedies, however, are limited to (1) the tenant's right to repair and deduct the cost from the rent, (2) a decrease in the rent based upon the diminished value of the premises, (3) payment of rent into a trust account, or (4) termination of the tenancy.

*Howard v. Horn*, 61 Wn. App. 520, 524-25, 810 P.2d 1387 (1991); *Dexheimer*, 104 Wn. App. at 471. The majority cites to no Washington cases that would allow a tenant to recover for personal injuries based on a landlord's violation of the RLTA. And for good reason—there are none.

---

[1] Chapter 59.18 RCW.

Ms. White would have been well within her rights to stop paying the rent and move out, or to have had the stairs repaired at the landlord's expense. RCW 59.18.090(1), .100(3). Fear of retaliation is no excuse given the tenant's protection under the statute. RCW 59.18.240, .250. Indeed, there is a presumption of retaliation if the landlord takes adverse action toward the tenant in the 90 days after the tenant enforces her rights under the RLTA. RCW 59.18.250.

In sum, the trial court erred by predicating an award of general tort damages for personal injuries on violations of the RLTA. *Dexheimer*, 104 Wn. App. at 472; *Howard*, 61 Wn. App. at 524-25.

## NONPERSONAL INJURY, NONLANDLORD TENANT CASES

Reliance on cases adjudicating disputes between condominium owners and builder vendors over the quality of the construction and materials and the owner's right to damages for "allegedly inferior stucco substitute" simply have no applicability to a claim against a landlord for personal injuries. The discussion, therefore, in *Atherton Condominium Apartment-Owners Ass'n Board of Directors v. Blume Development Co.*,[2] while interesting, is inapposite. The same is true for *Stuart v. Coldwell Banker Commercial Group, Inc.*[3] (condominium owners sought recovery for defects in private decks and walkways; court held that the implied warranty of habitability did not apply because the defects did not render the units unfit to occupy). These cases inform us of nothing pertinent to this dispute.

Likewise, those cases which recognize breach of an implied warranty of habitability as a defense to an unlawful detainer action have no applicability here. *Foisy v. Wyman*, 83 Wn.2d 22, 515 P.2d 160 (1973). This is not an unlawful detainer action. Had it been, then, of course, Ms. White could have asserted the Stalicks' breach of their implied

[2] 115 Wn.2d 506, 519-22, 799 P.2d 250 (1990).

[3] 109 Wn.2d 406, 745 P.2d 1284 (1987).

warranty of habitability as a defense to the action. *Id.* at 27.

Ms. White also relies on *Degel v. Majestic Mobile Manor, Inc.*[4] to support her claim. But the question in *Degel* was whether a landowner (in that case the owner of a mobile home park) owed a duty to its tenants to protect them from a "fast-flowing creek adjacent to the play area." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 45, 914 P.2d 728 (1996). The court articulated the dispositive issue as, "Is a landowner excused from the duty to exercise reasonable care to protect invitees from potentially dangerous conditions on the land solely because the danger is, in part, due to the risks which are inherent in a natural body of water?" *Id.* at 48.

It noted the landlord's affirmative obligation "to maintain the *common areas* of the premises in a reasonably safe condition for the tenants' use." *Id.* at 49 (emphasis added). Even a cursory review of the issue statement and the court's general statement of the law shows that the question addressed in *Degel* is not the question presented here. Here, we are clearly *not* talking about a common area. And, more importantly, the bulk of the discussion in *Degel* focuses on whether a natural body of water can ever be an unreasonable risk which a landlord must protect against— protect against because the landlord has a duty of care to maintain common areas. *Id.* at 49-55.

## REPAIRS

A landlord has no duty to repair noncommon areas absent an express covenant to repair. *Aspon*, 62 Wn. App. at 826. Both parties concede that there was no written lease between Ms. White and the Stalicks, nor did the Stalicks undertake any general duty to repair. The findings of fact, prepared by Ms. White, reflect no general duty to repair these premises. The Stalicks, then, had no contractual obligation to repair the stairs.

---

[4] 129 Wn.2d 43, 914 P.2d 728 (1996).

And the Residential Landlord Tenant Act of 1973 did not modify this common law rule. *Id.* at 827.

## VOLUNTARY REPAIRS

A landlord is, of course, liable at common law if the landlord voluntarily undertakes repairs to a tenant's apartment and does so negligently. *Regan v. City of Seattle*, 76 Wn.2d 501, 505, 458 P.2d 12 (1969).

The problem with this argument, though, is that the findings of fact here are completely devoid of any finding that (1) the Stalicks undertook to repair the stairs; or (2) that they performed any repairs negligently (assuming they were undertaken).

And in fact the court's findings of fact preponderate against such a finding. The stairs "were inherently dangerous and interfered with the safe habitation of the home" (Finding of Fact 2); the defendants "were aware of the poor condition of the steps" (Finding of Fact 3). CP at 51.

Nowhere in these findings, search as you might, will you find any reference to the affirmative negligence of the Stalicks by repairing the stairs negligently.

Likewise, the court's conclusions of law, which like the findings of fact were all prepared by Ms. White's counsel, also militate against a finding of any gratuitous undertaking to repair stairs, or negligent repair of those stairs having undertaken the repair. The court simply concluded that "[b]y not having the steps in a safe condition as a minimum for habitation, the defendants breached their duty to the plaintiff to comply with the code or even some modicum of safety" (Conclusion of Law 3). CP at 52.

If anything, these findings and conclusions suggest just the opposite of what is now being asserted, i.e., the Stalicks undertook to repair the stairs but did so negligently.

## PRESUMPTION OF NEGATIVE FINDINGS OF FACT

It is well settled Washington law that the absence of a

finding of fact on a material issue is *presumptively* a negative finding *against* the party who bore the burden of proof. *Taplett v. Khela*, 60 Wn. App. 751, 759, 807 P.2d 885 (1991). There is no argument here that the burden of proof was with the plaintiff, Ms. White. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 135, 769 P.2d 298 (1989) ("general burden of proof rules requir[e] the plaintiff to prove all elements of the cause of action").

The evolution of this rule, like many common law rules, has been bumpy. It started out as a clear statement that the court need not make negative findings. And where such findings were absent, and the evidence controverted, the presumption was that the court found against the party having the burden of proof. *Maynard v. England*, 13 Wn. App. 961, 968, 538 P.2d 551 (1975) (citing *Schmitt v. Matthews*, 12 Wn. App. 654, 659, 531 P.2d 309 (1975)); *Eggert v. Vincent*, 44 Wn. App. 851, 856, 723 P.2d 527 (1986); *Fettig v. Dep't of Soc. & Health Servs.*, 49 Wn. App. 466, 478, 744 P.2d 349 (1987). And while there are good policy reasons why the absence of a finding should be construed as a negative finding, not the least of which is finality, there are also practical reasons:

> We consider it the prevailing party's duty to procure formal written findings supporting its position. Prevailing parties must fulfill that duty or abide the consequences of their failure to do so.

*Peoples Nat'l Bank of Wash. v. Birney's Enters.*, 54 Wn. App. 668, 670, 775 P.2d 466 (1989).

The first exception carved out of this general rule addressed those cases where the evidence was uncontradicted. *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 776, 496 P.2d 343 (1972). And this makes sense. Obviously if the trial court, or counsel, made a mistake and failed to include an obvious finding (obvious because the evidence is uncontradicted), then strict application to the rule would work an injustice.

*LaHue*'s requirement of uncontradicted evidence gave

way to a more generous exception in *Douglas Northwest, Inc. v. Bill O'Brien & Sons Construction, Inc.*, where a negative finding was presumed unless "ample evidence to support the missing finding, and the findings entered by the court, viewed as a whole, demonstrate that the absence of the specific finding was not intentional." *Douglas N.W., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 682, 828 P.2d 565 (1992). But we refuse to apply this presumption where the end result would be directly contrary to the evidence presented at trial. *See Tacoma Commercial Bank v. Elmore*, 18 Wn. App. 775, 778-79, 573 P.2d 798 (1977).

In *LaHue*, which recognized this exception, there was uncontradicted evidence contrary to a finding. *LaHue*, 6 Wn. App. at 775-76.

But here the facts were disputed. Mr. Stalick was called as an adverse witness by Ms. White's attorney and testified:

Q. All right. And — had you ever tried to repair those stairs prior to July of 1996?

A. No, sir.

Q. Did you ever try to repair them after she fell in January of '96?

A. There was — no repair work, sir.

Q. When was the last time you ever repaired those stairs?

A. I have never repaired them.

Q. And — so the only change in the condition from this picture that — prior to 4th of July weekend of '96, the only change is that the stair steps are not — are not — even on the one side where they're broken loose?

A. They were not broken loose prior to my going on vacation over the 4th of July.

Q. Okay. And you never repaired them prior to July 4th at any time?

A. I have not, personally.

Q. Did someone else try to?

A. I don't know. My mother would — would have to have thought for that. I don't know. I don't have any firsthand knowledge.

Q. Did anybody ask you to repair them before July 4th of 1996?

A. No, sir.

Report of Proceedings (RP) at 64-65.

Now, Ms. White testified to the contrary:

Q. And did he repair the steps?

A. At one time, he came, and he tried to nail — some of the nails were up. Stuck up. Like they needed to be pounded back down. But they wouldn't stay. So he tried putting in new nails. That wouldn't work. So he tried using screws, with a screw gun.

THE COURT: You did, or he did?

A. He did. But it would just split the wood.

. . . .

Q. Now, do you know why you fell in January of '96.

A. Well, it was hard to shovel, because of the nails that were sticking up, you couldn't shovel all the way across. You could shovel an area, there's nails. Little area, nails, so you are either walking on ice, or tons of nails. So, it was — slick. Couldn't get down to the wood.

RP at 97-98.

Even under the most generous of these standards, it cannot be said that either the court or counsel inadvertently, mistakenly, or absentmindedly failed to include a finding of fact that the Stalicks had voluntarily, but then negligently, undertaken repairs on these stairs. So, for me, the injustice here is to remand this case to permit the court or counsel to come up with a theory not seriously urged at trial, not supported by the findings of fact, and as I read them, not even supported by the evidence.

On the theory for which the case is being remanded for further findings, Ms. White would have to establish the following: (1) that the Stalicks voluntarily undertook to repair the stairway used exclusively to access her apartment; (2) that those repairs were negligently performed; and (3) that the negligent repair proximately resulted in

her injuries. *See Regan*, 76 Wn.2d at 505 ("If a landlord negligently attempts to repair or is otherwise guilty of affirmative negligence on the premises he will not be excused from liability by virtue of the landlord-tenant relationship."). There is no finding of fact (in the findings prepared by Ms. White), which would support any of these required elements.

Whether the Stalicks here gratuitously undertook and then negligently performed repairs on these stairs would have been an essential component of Ms. White's cause of action. Here, that theory was not specifically alleged. Ms. White alleged instead a failure to maintain the premises in a habitable condition. And, again, there are no findings of fact or conclusions of law which could be said to remotely address this essential claim. The evidence on this issue is at best mixed. So even under the most liberal reading of the evidence, we should not say that the omission of a finding was inadvertent.

To simply remand on that question is to invite the trier of fact to "go find" some theory upon which to predicate a damage award. That is wrong. This case was fully tried by competent counsel. Findings of fact and conclusions of law were presented by the lawyer for Ms. White and signed by the trial court. I have reviewed those findings of fact and conclusions of law, and under the law as it now exists in Washington, they do not support a judgment for Ms. White. We should then reverse and dismiss.

For these reasons I respectfully dissent.